## STATE vs. JAMES IRVIN TRUITT.

*Criminal Law—Rape—Assault With Intent to Commit Rape—Drunkenness as an Excuse for Crime—Reasonable Doubt.*

·1.   The crime of rape is the carnal knowledge of a woman, above the age of ten years against her will.

2.   If the prisoner at the time of the commission of the alleged offense knew what he was doing, was able to appreciate the character of his act, and knew it was unlawful or wrongful, his drunkenness would be no defense.   In cases where a specific intent is an essential element of the offense intoxication becomes a matter for the jury to consider in determining whether the prisoner was capable of forming such intent at the time the act was perpetrated.   Evidence of intoxication should always be received with great caution.

3.   If a person resolves to commit a crime and then drinks to intoxication and commits the act, the fact of intoxication cannot lessen the degree of the offence.

4.   Drunkenness, or intoxication, should be considered by the jury only in reference to the intent to commit the rape, and does not apply in any manner to the charge of assault, because that does not embrace any specific intent.

5.   Reasonable doubt defined.

( *October 26, 1905.* )

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Robert H. Richards*, Attorney-General and *Daniel O. Hastings*, Deputy-Attorney-General, for the State.

*Alexander M. Daly* for the prisoner.

Court of General Sessions, Kent County, October Term, 1905.

INDICTMENT FOR ASSAULT WITH INTENT TO COMMIT RAPE.

At the trial, one Celestine Lito, the prosecuting witness, testified that on the fifth day of July, 1905, between eight and nine o'clock in the evening, while she was driving from her home to the town of Marydel, she saw a person lying across the road and stopped her horse, got out and told the person (who proved to be the

defendant Truitt whom she knew) to get over on the side of the road, as he was in danger, if he remained where he was, of being run over; that after she had induced Truitt to move from his position to the side of the road, she told him that when she came back from Marydel she would take him home in her dearborn. Shortly thereafter she came back and stopped and Truitt got into the wagon and sat on the board, which formed the seat of the dearborn, beside Mrs. Lito the prosecuting witness; that she talked with him and urged him to become a better man, as she had observed that he had been drunk on several occasions, that he spoke to her rather encouragingly along that line, telling her that he believed in God, etc., until they had passed by several houses along the road and were approaching a road, which crossed the one upon which they were traveling near a woods when he asked her if she was going to drive up this road to her son-in-law's house; she told him that she was not, but was going to drive on home; that he thereupon grabbed her around the waist with his arm and made an indecent proposal to her, which she refused and resented; that he then threw her down in the bottom of the dearborn and in her efforts to free herself from him the seat was upset and was thrown across her with the prisoner's weight resting upon the same; that she screamed but as nobody was apparently within hearing she asked him to let her up from under the seat as it was hurting her, and when he did so, quick as a flash she jumped from the dearborn and started running down the road towards her home; that the prisoner jumped out and ran after her and overtook her a short distance down the road and threw her down in the grass alongside of the road, where she continued to struggle with him and screamed; that he put his hand over her mouth and told her that if she did not keep still he would kill her; that she told him if he killed her he would have to pay the penalty by being killed himself, and he said he did not care if he was, that he was going to have what he was after; that about that time she saw a man come along the road (whom she thought to be a Mr. Luff, but who proved to be a Mr. Betton, whom she did not know, but who lived near and heard her scream), and she

called to him several times for help; that he did not heed her at first, but finally came to her assistance, when she jumped up and ran home, a distance of about two miles; her horse having in the meantime gone on ahead of her and being home when she arrived there.

The witness Betton testified that when he approached the prosecuting witness at the side of the road, the defendant Truitt ran at him, cursed him and told him he would fix him; the witness thereupon struck the defendant knocking him down, and then jumped upon him and struck him twice, when the defendant said "Do not strike me any more. This is only poor Truitt." That he thereupon desisted and let Truitt go. The husband of the prosecuting witness testified that when she arrived home she was bruised on the arm and side of the neck, that her hair was down and that she was very much excited, and that she related to him the facts of the assault made upon her by the defendant.

The defendant did not deny that he committed the assault, but stated that he had drunk a quart of apple brandy during the day of the alleged assault, July 5, and was so drunk that evening that he did not know anything about the matter of the assault, or anything else that happened. Several other witnesses testified to the defendant's drunken condition during the day and evening of July 5th, and one witness testified that in his opinion the defendant was so drunk that he did not know what he was about. There was also testimony to the effect that the character of the defendant for peace and good order was good.

PENNEWILL, J., charging the jury:

Gentlemen of the jury:—The prisoner at the bar, Joseph Irvin Truitt, is charged in this indictment with having committed, on the fifth day of July of the present year, an assault upon one Celestine Lito, with intent her the said Celestine Lito to ravish and carnally know.

This indictment is based upon a statute of this State which

provides, " That if any person shall, with violence, assault any female with intent to commit rape, such person shall be deemed guilty of felony," etc. And the charge embraces, as you have doubtless observed, not only an assault but also the intent to commit rape.

An assault is any unlawful and wrongful attempt by force and violence to do injury to the person of another and you may find the prisoner at the bar guilty of an assault simply, if the evidence shall justify such a finding. In order to find the prisoner guilty in manner and form as he stands indicted, that is, guilty of an assault with intent to commit rape, you must be satisfied beyond a reasonable doubt that if the prisoner had consummated his intent, that is, accomplished his purpose, he would have been guilty of rape.

It is therefore necessary for us to tell you briefly what constitutes the crime of rape. It has been defined by this Court to be the carnal knowledge of a woman, above the age of ten years, against her will; and if you believe that the prisoner not only committed the assault alleged in the indictment but that he intended at the time to commit the crime of rape, you should find him guilty in manner and form as he stands indicted.

We have been asked by the counsel for the defendant to instruct you as to the effect of drunkenness as a defense where the charge embraces a specific intent; and we think the law upon this question has been very correctly and clearly stated by the Court in case of *State vs. Di Guglielmo, 4 Pennewill, 336.* Judge Grubb, in charging the jury in that case said:

" Although voluntary intoxication constitutes neither excuse for nor palliation of crime, yet in cases where a specific or particular intent and purpose is an essential or constituent element of the offence, intoxication, even though voluntary, becomes a matter for consideration, and is competent evidence on the question whether by reason thereof, the defendant was capable of forming or entertaining such an intent or purpose at the time the act was perpetrated. Evidence of intoxication, however, should always be received with great caution, and carefully examined, in connection with the other proven circumstances.

" A person who is intoxicated may be capable of premeditation and deliberation, and a drunken man who commits a wrongful act wilfully and premeditatedly is as guilty in the eyes of the law as if he had been sober. If a person resolves to commit a crime and then drinks to intoxication and commits the act, the fact of intoxication cannot lessen the degree of the offence, because he specifically intended to commit it. When the specific intent is a necessary ingredient of the crime, so long as the defendant is capable of conceiving and entertaining the design, he must be presumed, in the absence of proof to the contrary, to have intended the natural and probable consequences of his act."

If you believe from the evidence that the prisoner at the time of the commission of the alleged offence, knew what he was doing and was able to appreciate the character of his act, and knew it was unlawlul or wrongful, his drunkenness would be no defense. All we have said to you about intoxication or drunkenness has reference only to the intent to commit the rape and does not apply in any manner to the charge of assault because that does not embrace any specific intent. Therefore no matter how drunk the person may have been at the time, you may find him guilty of assault only, provided the evidence in this case shall warrant you in so finding.

In this case you may find anyone of three verdicts. If you should believe that the prisoner at the bar did not commit the assault at all, your verdict, of course, should be not guilty. If you believe that he did commit the assault alleged, but are not satisfied that he intended to ravish or rape the prosecuting witness, your verdict should be not guilty in manner and form as he stands indicted but guilty of assault only ; but if you should believe that he not only committed the assault but that it was his intent at the time to ravish or rape the prosecuting witness, your verdict should be guilty in manner and form as he stands indicted. If after carefully considering all the evidence in the case, you entertain a reasonable doubt of the guilt of the prisoner, that doubt should inure to his benefit and your verdict should be not guilty. But we say to you that such a doubt must not be a vague, fanciful or merely possible

doubt, but such a real and substantial doubt as intelligent and impartial men may reasonably entertain upon a careful consideration of all the evidence in the case.

Verdict, not guilty in manner and form as indicted, but guilty of assault only.