MARION JAMES DASHIELL, Defendant-Appellant, v. THE STATE OF DELAWARE, Appellee.

(*October* 14, 1959.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Irving Morris* and *Samuel R. Russell* for appellant.

*Murray M. Schwartz*, Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 54, 1958.

SOUTHERLAND, C. J.:

Marion Dashiell was convicted of murder in the second degree and appeals.

Since it is admitted that the evidence was sufficient to support the verdict, the facts will be stated very briefly.

Dashiell lived with his wife and son in their three-story house in Wilmington. Some time in May, 1957 he rented a third-floor bedroom to Randolph Curlee, Jr. The men were at first friendly; but Curlee took to drinking and became quarrelsome. Bad blood between them developed.

On December 7, 1957, Curlee came home drunk, and after a while went to his room. Dashiell went from the first floor to his son's room on the second floor to get some cigarettes. While there he heard Curlee call him. He answered, and stepped out of the room. Curlee then called Dashiell a foul name and threatened bodily harm to Dashiell. Dashiell, hearing the pad of footsteps on the third floor, and seeing Curlee come out of his room, stepped back into the bedroom and picked up and loaded a shotgun. Curlee began to descend the stairs. Dashiell fired and killed him. According to Dashiell, Curlee had a knife in his hand, but no knife was later found.

Dashiell was arrested, brought to trial, and convicted of murder in the second degree.

Three points are raised by his counsel.

1. It is said that the trial court should have directed a verdict of acquittal because the uncontradicted testimony showed that Dashiell was mentally ill at the time of the shooting.

There was testimony for the defendant from a psychiatrist to the effect that Dashiell was unable to control himself—that he did not have sufficient will power to refrain from shooting. The court submitted the issue to the jury, but it is argued that since the State did not adduce evidence upon the issue, the court should have directed an appropriate verdict.

There are three answers to this contention. First, the witness' own testimony was somewhat contradictory. He testified first one way and then another. It was for the jury to choose which version to believe. Second, a report of a psychiatric examination by the State Psychiatrist, in which the witness participated, failed to show any mental illness. Third, the whole argument falls, because the jury was not bound by the expert testimony, and could accept it, reject it, or give it whatever weight they saw fit. *Wharton's Criminal Evidence*, Vol. 2, p. 1792; 20 *Am. Jur., "Evidence"*, p. 1208.

The court correctly left the issue to the jury.

2. It is next said that the court erred in charging the jury on the issue of drunkenness as a defense or partial defense to the crime.

The argument on this point is self-contradictory, and to present it we must state the facts.

A police officer who sought to take a statement from Dashiell after the latter's arrest testified that Dashiell was then so drunk that he could not question him. But this was three hours after the shooting and in the meantime Dashiell had apparently been drinking heavily.

On his own behalf Dashiell testified that although he had had something to drink before the shooting he was not drunk at that time, and knew what he was doing. "I had my presence about me."

Notwithstanding Dashiell's own testimony, counsel for the defense asked for a charge on drunkenness as a defense to the crime. The requested charge did not include the usual language—"the defendant contends that he was so drunk", etc.—but merely stated that "there is evidence that the defendant was intoxicated" etc. The court, however, began its charge with the usual phrase—"the defendant contends that he was so drunk", etc. Counsel now make the curious argument that the trial court erred in saying that "the defendant contends" that he was drunk, because he did not so contend, and consequently misled the jury on the issue.

The question arises at once: If the defendant made no contention of drunkenness, why did he ask for a charge on it? If the court erred in referring to defendant's "contention", the defense invited the error, and invited error is not ground for reversal. 5 *C. J. S. Appeal and Error* § 1560, p. 1203; 5A *C. J. S. Appeal and Error* § 1724, p. 959.

Moreover, if counsel's present contention is accepted, the court erred in submitting the issue to the jury in any form. This may be so; and the court might well have been justified in refusing any charge upon the point, in the light of defendant's admission that he knew what he was doing. But the error (assuming that it was error) was in favor of the defendant, and could not possibly have prejudiced him. On the contrary, the charge would have permitted the jury, if they found the defendant was so drunk that he was incapable of a deliberate and formed design to kill, to acquit him of first degree murder—as they actually did by their verdict.

Error favorable to the defendant is not ground for reversal. 5A *C. J. S. Appeal and Error* § 1678, p. 713.

3. The last point urged relates to a ruling of the trial court permitting the Attorney General, over objection, to cross-examine Dashiell's wife about the location of the shotgun.

The point at issue was this: The State's theory of the case was that the gun was kept in a closet on the first floor behind a bicycle, and that Dashiell, after going to the second floor and listening to Curlee's threats, descended to the first floor to get the gun, ascended the stairs, and then shot Curlee. The defense contended that the gun was in the upstairs bedroom.

After Dashiell's arrest the police took a statement from his wife, in which she said that the gun was in the dining room when she left for work on the day in question.

In an effort to prove that the gun was downstairs on the day of the shooting the State called the wife as a witness. On objection, the Attorney General apparently agreed that she could not be compelled to testify.

The wife was later called by the defense to testify only to the point that she did not know what her husband was doing on the day of the shooting. On cross-examination the State, over objection, was permitted to interrogate her with respect to the

location of the gun, the court ruling that the cross-examination was within the scope of the direct.

The wife testified that she did not see the gun in the dining room that morning. The State then essayed to contradict her by the use of the written statement.

The ruling of the court permitting the cross-examination is assailed as erroneous. The State replies that even so she was both a competent and compellable witness under the statute, since the matter inquired into did not involve a marital communication. See Title 11, *Del. C.* § 3502, abolishing the common-law testimonial disqualification of husband and wife in criminal cases; and *State v. Lynch,* 2 *W. W. Harr.* (32 *Del.*) 600, 128 *A.* 565, holding (by way of dictum) that with the removal of the disqualification the wife has become a compellable witness.

We find it unnecessary to decide the point. The location of the shotgun was pertinent only to the issue of premeditation. Obviously the State was seeking to show that the act of the defendant in descending to the first floor to get the gun was inconsistent with an impulsive act, and tended to show the deliberate mind and formed design to kill which are the indispensable elements of the crime of first degree murder. Since the jury acquitted Dashiell of first degree murder, the point at issue has become immaterial. The supposed error could not have affected the verdict.

We find no ground in the record to disturb the conviction.

The judgment of the Superior Court is affirmed.