**Warren J. WYANT,
Defendant-Appellant,**

v.

**STATE of Delaware, Plaintiff-Appellee.**

Supreme Court of Delaware.

Submitted: Dec. 18, 1984.
Resubmitted on Supplemental
Briefing: Oct. 18, 1985.
Decided: Dec. 16, 1986.

Arlen Mekler (argued), Wilmington, for defendant-appellant.

Gary A. Myers (argued), Deputy Atty. Gen., Georgetown, Richard E. Fairbanks, Jr., Chief of Appeals Div., Wilmington, for plaintiff-appellee.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

HORSEY, Justice.

The defendant, Warren J. Wyant, appeals his convictions of rape in the first degree (two counts), attempted rape in the first degree, kidnapping in the first degree and robbery in the first degree. The offenses, all involving one victim, were committed while defendant was admittedly under the influence of intoxicating liquor and drugs—voluntarily consumed. The principal issue on appeal is the proper construction, evidentiary application and constitutionality of 11 *Del.C.* § 421, declaring that voluntary intoxication is "no defense to any criminal charge."

The issue of section 421's construction and application arose in the context of a motion *in limine* by the State to bar the defense from presenting "any psychiatric evidence and/or any evidence pertaining to the effects of voluntary intoxication on the defendant." The Trial Court's ultimate ruling on the State's motion placed no limits on defendant's testimony, but barred any expert witness from giving opinion testimony concerning the effect of the alcohol and drugs consumed by defendant on his capacity or volitional ability to form the required *mens rea* for commission of the charged offenses. Lay witnesses would be permitted to give fact testimony concerning defendant's conduct and observed behavior, but would not be permitted to draw comparisons with defendant's normal or usual behavior.

We conclude that the Trial Court's ultimate *in limine* ruling on the admissibility of evidence of defendant's voluntary intoxication comported with legislative intent underlying section 421. We also conclude that section 421 does not, as defendant argues, deprive defendant of procedural due process or impermissibly relieve the State of its burden of proof of defendant's intent to commit the crimes charged.

Voluntary intoxication has never been accorded constitutional recognition as a defense to any criminal offense. With the Legislature's elimination in 1973 of the common law distinction between crimes of specific and general intent, the Legislature was empowered to conclude that Delaware's limited recognition of intoxication as a defense to crimes of specific intent should also end.

■ Section 421 as finally enacted in 1976, in conjunction with section 251(b) of Title 11, has the effect of extending the "no defense" of voluntary intoxication from crimes involving reckless conduct to all crimes defined under the Code, whether committed "intentionally, knowingly or recklessly." 11 *Del.C.* § 251(b). As ultimately amended, section 421, renders irrelevant and inadmissible under D.R.E. 402 any testimony, expert or lay, as to the effect of defendant's intoxication upon the issue of intent and proof of the required state of mind for conviction of the charged offenses.

However, defendant's intoxication does not alter the State's burden of proof beyond a reasonable doubt of each element of the offenses with which he was charged, including state of mind and intent as defined under 11 *Del.C.* §§ 231 and 251. The trier of fact is simply precluded from using defendant's intoxication as a basis for finding defendant to lack the requisite intent for conviction of the several offenses.

I

Apart from the question of defendant's intent, the essential facts, taken from the State's case, are undisputed. On the night of October 18, 1982, victim, a twenty-five-year-old pregnant housewife, was at home watching television in a downstairs family room in New Castle County, Delaware. Her husband was at work and her two young children were asleep in the house. About ten o'clock, victim heard suspicious noises on the floor above, the sound of a sliding glass outer door opening and someone entering the house. She grabbed a shotgun from a wall case and started to proceed upstairs when she was confronted by a man pointing a small handgun at her. She then realized that her gun was not loaded; and defendant disarmed her and placed his gun to her head. Defendant told her that if she made any noise or failed to do as he said, he would kill her and her children. Defendant then ordered victim to remove her clothing and forced her into an adjacent downstairs bedroom, where he attempted anal intercourse upon her. Failing in that attempt, defendant raped victim vaginally. Thereafter defendant forced victim at gunpoint to go upstairs to another bedroom, where he again raped and sexually assaulted victim. During this time defendant continued to threaten victim and her children. Defendant then forced victim back downstairs, where he again raped as well as sexually assaulted her. Defendant also searched the house and removed from victim's pocketbook a dollar bill. He also attempted to wipe his fingerprints off various objects in the house that he had touched. After putting his clothes on, the assailant forced victim, still naked, to leave the house, and demanded from her directions to the nearest interstate highway. Vowing that he would hurt her family if she reported the attacks, defendant fled into the night. From the time of defendant's entry into the house until his departure, more than one hour had elapsed.

The following day, defendant was arrested after victim had identified defendant in a photographic display. After being taken into police custody and given his *Miranda* rights, defendant on October 19, 1982 admitted having been the intruder in victim's home near Newark the previous evening. In a recorded statement received in evidence over defendant's objection, defendant admitted having been present in victim's home and to have been the perpetrator of the offenses charged.

Defendant, who was sixteen years of age at the time of the offenses, was prosecuted as an adult for the rape and kidnapping offenses under 10 *Del.C.* §§ 921(2)a and 938(a) after the Family Court found defendant not to be amenable to its rehabilitative processes. 10 *Del.C.* § 921(2)b.

At the outset of trial, the State in its case-in-chief, anticipating that defendant would contend that he was so intoxicated that he was incapable of forming the necessary *mens rea*, filed a motion *in limine*. Contending that voluntary intoxication was "no defense" under 11 *Del.C.* § 421, the State moved to exclude defendant from introducing "any psychiatric ... or any evidence [pertaining] to the effects of voluntary intoxication on the defendant." The State did so in anticipation of defendant's calling an expert medical witness to testify that defendant was, through consumption of alcohol or drugs, incapable at the time of the offenses of forming the required intent to be found guilty of rape, kidnapping and robbery.

Defendant, having reserved his opening statement, then confirmed that he intended to establish in his case-in-chief that on October 18, 1982 he was so intoxicated from

voluntarily consuming alcoholic beverages and drugs that he had no recollection of what happened that day. More importantly, defendant argued that due to his intoxication, he was unable to form the required intent to commit any of the crimes with which he was charged. Defendant stated that he intended to call expert as well as lay witnesses. The expert witnesses, a psychiatrist and a social worker, would testify to the effects of intoxicants on defendant's ability to control his acts, to differentiate between right and wrong and to form the mental state or specific intent required for conviction of rape, kidnapping and robbery. The lay witnesses would testify concerning defendant's conduct on October 18 and contrast that with his prior conduct or usual behavior.

The Trial Court's initial bench ruling was more sweeping than that sought by the State. The Court would bar defendant from introducing in his case-in-chief any evidence relating to the "effects" of his voluntary intoxication on his capacity to form the required *mens rea*. The Court was of the view that defendant was precluded from offering "any testimony dealing with the question of intoxication."

Later, in response to defendant's offer of proof of his own and lay and expert testimony,[1] the prosecutor stated that it was not the State's intention to preclude defendant or lay witnesses from giving fact testimony concerning defendant's consumption and conduct on October 18. Further, defendant should be permitted to testify as to the effects of his consumption on him and his recollection, if any, of the events of October 18. The State's motion was intended only to prohibit any expert or third party from testifying as to the effect of defendant's consumption of alcohol or drugs on defendant's intent or his ability to form the necessary intent to commit the crimes with which he was charged.

The Court then rescinded its previous order and (before defendant began his case-in-chief) made the following bench rulings: *One*, defendant would be permitted to testify concerning his consumption of alcohol or drugs, its effect upon his mental and physical condition, and his recollection of events on October 18. *Two*, lay witnesses could give fact testimony as to their knowledge of defendant's consumption and their observance of defendant on October 18, but would not be permitted to characterize defendant's conduct on the 18th as normal or abnormal behavior, nor express any opinion as to defendant's state of mind. *Three*, no expert witness would be permitted to give any opinion testimony as to the effects of defendant's voluntary consumption of alcohol (or drugs) upon his mental state, volition or ability to form the intent necessary for commission of the crimes charged. The Court also barred counsel from arguing to the jury that defendant's consumption deprived him of the ability to form the necessary intent to commit the crimes with which he was charged.[2]

---

1. Defendant made the following proffer:
MR. MEKLER: It was specifically the intention of the defense to present evidence by Mr. Wyant that he had consumed large quantities of tequila, beer, Valiums and some other pills that put him into such a condition that he has no recollection of what occurred during large portions of the day, has no recollections of any sexual offenses itself, that he certainly had no intention of committing any—knowingly or intentionally committing any act.

The witnesses present would indicate he was acting in a manner different than normally he acted, that they had been with him all day long or for most part of the day, and that portions of the day they had actually viewed him consuming those controlled substances and alcoholic beverages.

There would be testimony, expert testimony, that as a result of the consumption of these type of—alcohol and these type of drugs, that Mr. Wyant could not have formed the specific intent, even to the extent that he could have differentiated right from wrong or been able to, to some extent, be conscious of what he might have done, the effect of these foreign substances would have been to disable him from controlling his acts, thus making the acts involuntary.

2. Since defendant did not contend that his intoxication had rendered him physically inert or incapable of performing the acts with which he was charged, this case does not present the question of defendant's physical capacity to perform the offenses charged. *See* 11 *Del.C.* § 242.

Following the Trial Court's ultimate ruling *in limine,* defense counsel began his case-in-chief with a brief opening statement.[3] He then called as his only witness the defendant, who testified to having no recollection of the night of October 18.[4] Under cross-examination, after defendant denied any recollection of making a statement to the police on the morning of October 19, defendant's recorded statement, previously referred to, was offered and admitted over defendant's objection.[5] As previously noted, defendant was found guilty of Rape in the first degree (two counts), 11 *Del.C.* § 764; Attempted rape in the first degree, 11 *Del.C.* §§ 531, 764; Kidnapping in the first degree, 11 *Del.C.* § 783A; and Robbery in the first degree, 11 *Del.C.* § 832. Defendant was acquitted of the remaining charge of Burglary in the first degree.

On appeal, defendant asserts that the Trial Court's ultimate ruling *in limine* represents an erroneous construction of legislative intent underlying section 421; and that otherwise, section 421 violates defendant's right to procedural due process. For the reasons which follow, we find no error in the Court's ultimate *in limine* ruling.

## II

We first address the issue of legislative intent underlying 11 *Del.C.* § 421. We do so for the purpose of determining what evidentiary and procedural effect should be given section 421's declaration that voluntary intoxication of a defendant at the time of commission of a criminal offense is "no defense to any criminal charge if the intoxication was voluntary." Section 421 has existed in its present form since 1976, when it was enacted into law by 60 *Del.Laws,* c. 680. As enacted, section 421 currently provides:

**421. Voluntary intoxication.**

The fact that a criminal act was committed while the person committing such act was in a state of intoxication, or was committed because of such intoxication, is no defense to any criminal charge if the intoxication was voluntary.

Voluntary intoxication has existed as a statutory defense only since 1973 with the

---

3. Defendant made the following opening statement:

MR. MEKLER: Madam Forelady and ladies and gentlemen, you have heard the State's evidence at this point, and it is now the defense's turn to present its evidence. The evidence presented by the defendant is going to be probably surprisingly short to you. You'll hear evidence from the defendant himself as to his activities earlier in the day on October 18.

The evidence presented to you will be that he met with some of his friends earlier in the day, probably some time around 12:00 or 1:00 o'clock. He started consuming large amounts of alcohol, tequila, over half a pint of tequila, about two six-packs of beer and about six or eight Valiums.

He will testify that he has some recollection of what happened during that period of time, and that he eventually recalls at one point being in a van with his friends and falling out.

He'll indicate to you further that he recalls in some fashion the police coming over to his room in the second floor of his house where he laid in bed with all his clothes on and was arrested.

That will be about the extent of the testimony that will be presented to you by the defendant. There will be no other witnesses presented.

I am going to call as my first witness and only witness Warren Wyant.

4. The defendant, eighteen years of age at time of trial, testified to having dropped out of school in the ninth grade and to have been a chronic abuser of alcohol and drugs, for which he had been hospitalized. On October 18 (the day of the crime) defendant had started drinking beer and tequila with a friend in the early afternoon. Defendant was also taking Valium. His last recollection of any events on October 18 was falling out of a van. His next recollection was waking up the morning of the 19th at home in bed and being confronted by the police.

5. Defendant's objection to the admissibility of his statement was not on Fifth Amendment *Miranda* grounds; and defendant ultimately waived his initial grounds of lack of voluntariness. Nor did defendant deny having made the statement. His defense was simply that he had no present recollection of having made the statement; and, on that ground alone, argued that the contents of his statement were not admissible, a contention not preserved on appeal. In his statement, defendant admitted to having had sexual intercourse with the victim and stated that he had "made her do obscene things."

Delaware Legislature's enactment in 1972 of Delaware's first comprehensive criminal code, 58 *Del.Laws*, ch. 497 (approved July 6, 1972, ultimately effective July 1, 1973). However, between the adoption in 1972 of section 421 and the 1976 restatement of section 421, the statutory defense of intoxication was legislatively rewritten three times within the space of one year. For ease of reference, we refer to the four successive enactments of section 421 as: section 421–*one;* section 421–*two;* section 421–*three;* and section 421–*four.* Section 421–*one,* as originally enacted with the 1973 Code, but to be later rescinded before its effective date, provided:

(1) Except as provided in subsection (2) of this section, voluntary intoxication is an affirmative defense in a prosecution for a criminal offense only if it negatives the element of specific intent required by the crime charged.

(2) When recklessness is an element of an offense, and the defendant, as a result of voluntary intoxication, is unaware of a risk, his unawareness does not negative the mental state of recklessness if he would have been aware of the risk had he not been intoxicated.

Section 421–*one* fairly clearly codified the Delaware decisional law variant of the common law. Under pre-code Delaware case law, "[a]s a general rule, drunkenness [was] no excuse for any crime," but evidence of intoxication was admissible to reduce a crime requiring a specific intent (first degree murder) to second degree murder. But in no event was "drunkenness ever ... allowed to reduce a first degree murder to manslaughter or to justify an acquittal." *Dashiell v. State,* Del. Supr., 154 A.2d 688, 691 (1959); *State v. Kupis,* Del. O & T, 179 A. 640, 641 (1935). As applied to rape, evidence of intoxication was admissible to "negate the defendant's ability to form a particular *specific* intent required for commission ... of rape." 1973 Code Commentary § 421, at 86, 87 (underlining added). *State v. Truitt,* Del. Ct.Gen.Sess., 62 A. 790 (1905).

Thus, section 421–*one* evidenced legislative intent to continue the Delaware common law variant of making the availability of voluntary intoxication as a defense turn on whether the criminal act charged required proof of a particular *mens rea* or a specific intent to commit a given crime.[6] As the Commentary to proposed, but repealed, section 421–*one* states:

It therefore appears that under § 421, intoxication will continue to negate the ability to form an intention, <u>if intention is a material element of the offense.</u> And, as in the past, the defendant can still be found guilty of another crime which does not require a mental state which he would have been unable to form. As at common law, intoxication may also negate knowledge where it is a material element.

1973 Code Commentary § 421, at 88 (underlining added).[7]  *Compare Dashiell, su-*

---

6. Section 421-*one* was also viewed as representing an adaptation of the Model Penal Code treatment of the intoxication defense under which evidence of voluntary intoxication was admissible to negate a required mental state, purpose or knowledge that may be essential for conviction. The rationale for this approach was that if a required mental state for conviction is lacking, the reason, in this instance voluntary intoxication, "is quite plainly immaterial." 1973 Code Commentary § 421, at 88, quoting Model Penal Code § 2.08, comment c at 7–8.

7. However, the Commentary also reflects unease of the commentator with the Legislature's reference within section 421(1) to "the element of specific intent" in a given criminal offense. The commentator criticized the Legis-

lature's use of such language as "somewhat questionable in the context of a Code which has in its other provisions rejected the common-law concept of specific intent." 1973 Code Commentary § 421, at 87–88. Thus, under section 251 of Title 11, subsection (a), "No person may be found guilty of a criminal offense without proof that he had the state of mind required by the law defining the offense or by subsection (b) of this section." Subsection (b) then states, "When the state of mind sufficient to establish an element of an offense is not prescribed by law, that element is established if a person acts intentionally, knowingly or recklessly." Those three latter terms are then defined under section 231. In defining the terms, "intentionally" and "knowingly," section 231 does not include a

*pra*, where this Court, in rejecting a contention that evidence of intoxication should permit a trier of fact to reduce a charge of first degree murder to manslaughter or even acquittal, stated:

> In no Delaware case has drunkenness ever been allowed to reduce a first degree murder to manslaughter or to justify an acquittal. Plainly, drunkenness is consistent with common-law malice, and hence is no defense to a charge of second degree murder.

154 A.2d at 691. Thus, even under pre-Code law, Delaware rejected the Model Penal Code's theoretical view that voluntary intoxication could be interposed as a complete defense to any crime requiring a specific intent.

As to crimes not requiring proof of a specific intent, subsection (2) of section 421–*one* reflected an intent to preclude under the Code, as at common law, the raising of voluntary intoxication as a defense to a criminal charge requiring simply a reckless state of mind for guilt. To this limited extent, section 421–*one* evidenced legislative intent to continue the rule in *Dashiell* barring use of voluntary intoxication as a defense to any criminal charge other than one requiring a specific and deliberate intent. The reason for continuing the Delaware common law limited "no defense" variant was simply as a deterrence to protect society, as *Dashiell* implies. Thus, under subsection (2) of section 421–*one*, intoxication was *no defense* with respect to crimes as to which recklessness was an element.

> [A]ll men are to be held to a standard of conduct which they could have observed had they been sober. A great many crimes are committed under the influence of overindulgence in alcohol, and it would

requirement of finding a "specific intent." Moreover, under subsection (c) of section 251, "It is unnecessary to prove the defendant's state of mind with regard to:
> (a) Offenses which constitute violations, unless a particular state of mind is included within the definition of the offenses...."

be wrong that a defendant should be excused from guilt for crimes of recklessness which by their very nature presuppose an indifference to society's standards of behavior.

1973 Code Commentary § 421, at 89.

In June 1973, before section 421–*one* became law, the Delaware Legislature repealed the entire section and adopted in its place a new section (hereafter section 421–*two* ), stating:

### § 421. Voluntary Intoxication.

The fact that a criminal act was committed while the person committing such act was in a state of intoxication, or was committed because of such intoxication, is no defense to any criminal charge if the intoxication was voluntary.

59 *Del.Laws*, c. 103. This legislation (later to be reenacted as present section 421) remained in effect for less than one month. By 58 *Del.Laws*, c. 497, the General Assembly (in apparent ignorance of its June enactment of section 421–*two* and without referring to it) again amended section 421 by striking subsection (1) of section 421–*one* and substituted in its place a new subsection (1) to read:

> (1) Except as provided in subsection (2) of this section, voluntary intoxication is an affirmative defense in a prosecution for a criminal offense only if it negatives the element of intentional or intentionally.

59 *Del.Laws*, c. 203, § 37, enacted July 12, 1973. By this legislation (referred to as section 421–*three* ), the General Assembly, in effect, reenacted section 421–*one* of 58 *Del.Laws*, c. 497, but substituted for the words, "the element of specific intent required by the crime charged," the words,

It only remains "necessary to prove that the act or omission on which liability is based was voluntary" within the meaning of sections 242 and 243. As will be seen, the codified crimes in the instant case do not include a particular state of mind within the definition of the several offenses.

"the element of intentional or intentionally."[8]

In 1976, the Legislature, for a fourth time within four years, rewrote section 421 by returning to the "no defense" language of section 421–*two*. 60 *Del.Laws*, c. 680. The Delaware General Assembly thereby restated section 421 to its present form, quoted above.

### A.

The parties differ as to the legislative intent underlying section 421. The State, in a more detailed analysis of the evolution of section 421 (previously described by this Court in *Goddard v. State*, Del.Supr., 382 A.2d 238, 239 n. 2 (1977), as "tortuous"), contends: (a) that its history evidences legislative intent to eliminate voluntary intoxication as a defense; (b) that section 421's explicit "no defense" language permits no other conclusion; and (c) that other provisions of the Code confirm this. The State submits that the Legislature has, in effect, come full circle with voluntary intoxication and by section 421–*four* has returned Delaware to the original common law that " 'drunkenness' is no excuse for [any] crime." Delaware Criminal Code with Commentary, § 421 at 86 (quoting *State v. Adams*, Del. O. & T., 65 A. 510, 511 (1906)). The evidentiary result, according to the State, is that *all* evidence of defendant's voluntary intoxication becomes irrelevant to the issue of defendant's intent to commit the charged crimes.

■ Defendant's construction of the legislative history of section 421 is more simplistic. He views the legislative history of section 421 as having a much narrower purpose: to accomplish no more than to abolish the availability of voluntary intoxication as an affirmative defense. Defendant argues that the effect of the legislation is simply to remove voluntary intoxication as a "legal" defense, but that it remains a "fact" defense. Thus, defendant reads the

legislation as intended to reserve to an intoxicated defendant the right to assert his intoxication to negate any element of an offense, including intent. In his view, defendant retains the right to offer evidence—expert and lay—of his voluntary intoxication to establish his lack of a *mens rea* to commit the charged offenses of rape, kidnapping and robbery. To give the "no defense" language of section 421 the broader interpretation placed upon it by the State would, defendant argues, alter the State's burden of proof, violate defendant's right of due process, and put section 421 in conflict with other provisions of the Criminal Code. We cannot agree with such a limited construction of present section 421. Nor do we find the other provisions of Title 11 of the Criminal Code, including section 302(b), to support the proposition that voluntary intoxication, though abolished as an affirmative defense, remains a "fact" defense that a defendant has a right to assert under section 302(b) and which the State then has the burden to disprove beyond a reasonable doubt.

### B.

■ The legislative history of the statutory defense of voluntary intoxication, 11 *Del.C.* § 421, evidences, in our view, legislative intent to accomplish several objectives: *One*, to abolish the pre-Code Delaware law's limited recognition of voluntary intoxication as an available affirmative defense to certain crimes requiring proof of specific intent but as "no defense" to crimes involving reckless conduct or proof of only a general intent; *two*, to extend the "no defense" at common law of voluntary intoxication for crimes involving reckless conduct or unspecified general intent to all Code crimes and thereby abolish voluntary intoxication as an available defense to any crime; and *three*, to harmonize section 421 with the underlying principles of the Criminal Code and specifically section 231 defin-

---

**8.** As previously noted, this change in language appears to have been prompted by the Code Commentary's criticism of the Legislature's injection of the "specific intent" language in sec-

tion 421(1)-*one;* and the substitution of the words "intentional" or "intentionally" fairly clearly appears to have been borrowed from section 251(b).

ing state of mind and proof of intent. The consequence of the latter is that the State is not required to prove that an intoxicated defendant possessed a particular state of mind or *mens rea* absent an express statutory provision to the contrary.

■ The evidentiary effect of the section 421 amendments, in conjunction with other pertinent sections of Title 11 (sections 231(a) and (b), 242, 243, 251(c), and 302(b), hereafter discussed) requires us to sustain the Trial Court's ultimate ruling *in limine.* The Court correctly barred defendant from introducing any testimony in the nature of opinion evidence (or argument) for the purpose of establishing that defendant, by reason of being voluntarily intoxicated, lacked the intent or volition to commit kidnapping, rape or robbery.

## C.

In *Goddard v. State, supra,* this Court construed an earlier version of section 421, that is, section 421–*three,* making voluntary intoxication an affirmative defense. Apart from sustaining the imposition of such burden on defendant as not violative of defendant's due process rights, state or federal, we also rendered other rulings that bear upon certain of the issues here raised.

In *Goddard,* we found section 421 not to alter unconstitutionally the State's burden of proof of all elements of a crime, nor to present a substantial federal question. *Cf. Rivera v. State,* Del.Supr., 351 A.2d 561, *appeal dismissed,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976), and *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). We stated, "The principle of law which emerges from the cases is that once the requirements of *In re Winship, supra,* are met, the State is free

to designate additional defenses and allocate the burden of proof pertaining to those defenses, as they see fit. *Patterson v. New York, supra."* *Goddard, supra* at 241. We acknowledged section 421–*three* to be "ambiguously worded in terms of negating intent." But we concluded that any arguably due process question with respect to burden of proof of intent was "a false conflict when examined in the light of the other sections of the Criminal Code which make clear that the constitutional level of proof must be met by the State." 382 A.2d at 242.

■ If the legislative intent underlying section 421–*three* was not in doubt in *Goddard,* it surely is even less so as to section 421–*four*—given its elimination of intoxication as an available affirmative defense and its declaration that voluntary intoxication is "no defense." The argument that voluntary intoxication must remain an available "fact" defense for defendant to assert because it may negate the element of intent or volition does not stand analysis. *First,* it would lead to a patently absurd result: of converting to a simple defense which the State must disprove what was formerly an affirmative defense for which the defendant had the burden of proof. *Compare* section 302(b) with section 304(a).[9] The Legislature must be presumed not to intend unreasonable, absurd, or unworkable results. *See Opinion of the Justices,* Del.Supr., 295 A.2d 718, 721–22 (1972); *E.I. DuPont de Nemours & Co. v. Clark,* Del.Supr., 88 A.2d 436, 438 (1952). *Second,* the argument contradicts "the fair import" or meaning of section 421–*four* and its mandate that intoxication shall now be "no defense to a criminal charge if the intoxication was voluntary." 11 *Del.C.*

---

**9.** 11 *Del.C.* § 302(b) provides:

The defendant may produce whatever evidence he has tending to negate the existence of any element of the offense, and, if the court finds that a reasonable juror might believe that evidence, the defendant is entitled to a jury instruction that the jury must consider whether the evidence raises a reasonable doubt as to the defendant's guilt.

11 *Del.C.* § 304(a) provides:

When a defense declared by this Criminal Code or by another statute to be an affirmative defense is raised at trial, the defendant has the burden of establishing it by a preponderance of the evidence.

§ 203.[10]  Defendant's construction would have the reverse effect of shifting the burden of proof of disproving the defense of intoxication to the State.

Finally, we find our construction and application of section 421 to be entirely consistent with other pertinent provisions of the Criminal Code.  The Code's rejection of the common law delineation of crimes between those requiring proof of a specific intent and those requiring proof simply of a general intent is mirrored in the evolution of section 421 to its present language.  This is to be seen in sections 231 and 251 of the Code.  *See* note 7, *supra.*  Through sections 231 and 251, the Legislature has clearly rejected the common law concept of specific intent, that is, requiring for defendant's conviction of the crimes with which he is charged proof of a specific intent to kidnap, rape and rob, as was true under the Delaware variant of the common law immediately preceding the 1973 Code.

Section 421, as it has evolved, represents a reconciliation with sections 231 and 251 as to proof of the required state of mind of a voluntarily intoxicated defendant for conviction of any criminal offense committed while so intoxicated.  Section 251(b) establishes that if the state of mind for conviction of a particular offense is not prescribed by law, "that element is established if a person acts intentionally, knowingly or recklessly."  11 *Del.C.* § 251(b).  Section 251(c)(1) declares that proof of a defendant's state of mind is unnecessary as to a given offense "unless a particular state of mind is included within the definition of the offenses."  11 *Del.C.* § 251(c)(1).  Section 231(a) states that a person "acts intentionally with respect to an element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause that result."  11 *Del.C.* § 231(a).  With the elimination of specific intent from the Code and section 421, defendant's right to introduce evidence under section 302(b)

may not be construed as including evidence of voluntary intoxication when it is no longer a defense under section 421.

Section 421, read in conjunction with section 251 and section 231, evidences legislative intent to bar admission of evidence of intoxication when offered to negate a defendant's intent to commit any of the charged offenses of rape, kidnapping and robbery.

### III

We turn to defendant's due process argument; namely, that he was denied due process under state and federal law through the Trial Court's *in limine* ruling.  As previously noted, the Court's ultimate ruling barred any expert witnesses from opining as to the effect of defendant's consumption of intoxicants on his ability to control his acts and to form the required intent (defined by defendant in terms of "specific intent") for conviction of rape, kidnapping, and robbery.  Lay witnesses were also barred from giving equivalent testimony or from contrasting his normal or usual demeanor with that on the day of the crimes.  Defendant argues that the Trial Court's *in limine* rulings violated defendant's due process rights: (1) by depriving defendant of the opportunity to "negative the element of intentionality" in violation of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Patterson v. New York, supra;* and *State v. Moyer,* Del.Supr., 387 A.2d 194 (1978); and (2) by relieving the State of its burden of proof that defendant possessed the requisite intent for conviction of the charged offenses.  Defendant says that the consequence of the Court's rulings was to convert the offenses of rape, robbery, and kidnapping by an intoxicated defendant into crimes of strict liability rendering intent immaterial.

---

**10.**  11 *Del.C.* § 203 provides:

The general rule that a penal statute is to be strictly construed does not apply to this Criminal Code, but the provisions herein must be

construed according to the fair import of their terms to promote justice and effect the purposes of the law, as stated in § 201 of this title.

Defendant's due process arguments, in somewhat different form, were made and rejected in *Goddard, supra.* *See* II C, *supra.* In our view, the Trial Court's ultimate *in limine* ruling comported with due process; the State was not relieved of its burden of proof (beyond a reasonable doubt) of the essential elements of the offenses for which defendant was charged; and the Court's rulings did not convert the charged crimes into crimes of strict liability.

■ Defendant's due process argument is premised upon an erroneous assumption that voluntary intoxication is a constitutionally protected defense to criminal conduct. *United States ex. rel. Goddard v. Vaughn,* 3d.Cir., 614 F.2d 929, 935, *cert. denied,* 449 U.S. 844, 101 S.Ct. 127, 66 L.Ed.2d 53 (1980) (recognizing then-section 421-*three*'s affirmative defense of voluntary intoxication to be a "gratuitous" defense not constitutionally required); *Goddard v. State, supra.* As previously noted, under pre-1973 Delaware Code law, voluntary intoxication was only a limited defense to crimes requiring proof of specific intent and no defense to crimes involving general or reckless intent, including second degree murder. Even as a limited common law defense, voluntary intoxication was granted only affirmative defense status, for which the burden of proof fell upon the defendant. Under pre-Code Delaware law, the availability of the defense of voluntary intoxication hinged on the definitional elements of the given crime. Yet federal courts have traditionally deferred to the states to define the elements of offenses, the designation of defenses, and the allocation of burden of proof, *Patterson v. New York, supra.*

■ Thus, the Delaware Legislature's ultimate decision by section 421-*four* to eliminate voluntary intoxication as a defense to any crime does not implicate any recognized constitutional right. *Goddard v. State, supra* at 241. Just as the Legislature was entitled to declare voluntary intoxication to be no defense to reckless conduct, it was similarly entitled to declare voluntary intoxication to be no defense to intentional conduct, as defined under sections 251 and 231.

■ It is also clear from the record, including the Court's jury instructions, that the Court's *in limine* ruling did not alter the State's burden of proof of the essential elements of each of the charged offenses. The Court instructed the jury that the State retained the burden of proof, beyond a reasonable doubt, of all the elements of the several offenses, including intent, that is, requisite state of mind (as defined under sections 251(a) and (b) and 231(a) and (b), *supra*) for conviction of the several crimes. The principal effect of the *in limine* ruling was to render irrelevant under D.R.E. 402 all evidence of defendant's voluntary intoxication that was offered upon the ultimate issue of whether defendant possessed the requisite intent to commit the charged offenses. The elimination of voluntary intoxication as a defense did not relieve the State of its burden of proving that defendant otherwise possessed the requisite intent defined by sections 251 and 231. Within those definitions of acceptable social conduct imposed by the will of the people through the Legislature, defendant received the process constitutionally due him.

### IV

We turn to defendant's remaining contention, that he was unlawfully convicted of attempted rape as well as rape. Defendant contends that the Trial Court committed legal error in failing to merge the attempted rape into the "completed act." Defendant argues that the upstairs rape was simply the culmination of his first unsuccessful downstairs attempt at rape. Defendant would characterize the attempted rape downstairs and the later rape upstairs as "one continuous act." Clearly, the facts permit a contrary construction and, so construed, are sufficient to sustain defendant's conviction of the several counts of the indictment.

■ The facts of record, as previously outlined, establish: that after defendant

first attempted rape by anal intercourse downstairs, he committed vaginal rape downstairs and thereafter forced victim upstairs, where he committed a further act of rape and further sexual assault on victim. The jury was not required to accept defendant's selective and subjective account of what happened to characterize victim's "experience as one continuous act ... [resulting in] the completed act." The record supports a finding of multiple sexual assaults upon the victim, each of which was sufficient to sustain defendant's multiple convictions of two counts of rape and one count of attempted rape. From that record, a rational trier of fact could conclude that defendant, while on the first floor, committed two offenses, one of attempted rape and one of rape, and then committed a third offense of rape on the second floor.

▆▆ Defendant's legal argument is limited to that of legislative intent. Defendant does not argue that his multiple convictions and sentences are violative of any constitutional right. Defendant simply argues that the Trial Court, in permitting both convictions and multiple sentences, violated 11 *Del.C.* § 206(a)(2). We cannot agree.

Section 206 provides in pertinent part:

(a) When the same conduct of a defendant may establish the commission of more than 1 offense, the defendant may be prosecuted for each offense. The defendant's liability for more than 1 offense may be considered by the jury whenever the State's case against him for each offense is established in accordance with § 301 of this title. He may not, however, be convicted of more than 1 offense if:

(1) One offense is included in the other, as defined in subsection (b) of this section; or

(2) One offense consists only of an attempt to commit the other....

The Code Commentary provides as follows:

Subsection (1) permits the State's case against the defendant to go to the jury on as many offenses as to which the State can meet its burden of making out a prima facie case as stated in § 301(1). The jury may convict him of as many offenses as he has committed unless one offense is included within the other (in which case the jury may find him guilty of either offense, but not both), one offense consists only of an attempt to commit the other, or inconsistent findings of fact are required to establish the commission of the offenses.

Legislative intent with respect to a question of cumulative prosecutions and punishment requires a common sense application. *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955); *Irby v. United States*, D.C.Cir., 390 F.2d 432, 436 (1967). Whether a course of conduct involving multiple sexual assaults permits prosecution for more than one statutory offense, of rape, ultimately turns on the facts, particularly the timing between the sexual acts and the physical movement of the victim between the acts. *Harrell v. State*, Wis.App., 88 Wis.2d 546, 277 N.W.2d 462, 469 (1979). Here the facts fully support defendant's prosecution and conviction for the multiple offenses of attempted rape and rape. *Cf. State v. Frazier*, Conn. Supr., 185 Conn. 211, 440 A.2d 916, 925 (1981), *cert. denied*, 458 U.S. 1112, 102 S.Ct. 3496, 73 L.Ed.2d 1375 (1982); *Harrell v. State, supra. See Burton v. State*, Del. Supr., 426 A.2d 829 (1981).

\*　　\*　　\*

Affirmed.