**Richard DAVIS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Nov. 6, 1986.
Decided: March 18, 1987.

David J. Facciolo (argued), Asst. Public Defender, Wilmington, for appellant.

Richard E. Fairbanks, Jr., (argued), Chief of Appeals Div.; Loren C. Meyers and Timothy J. Donovan, Jr., Deputy Attys. Gen., Dept. of Justice, Wilmington, for appellee.

Before HORSEY, MOORE and WALSH, JJ.

HORSEY, Justice:

Defendant, Richard Davis, appeals his convictions in a jury trial of intentional murder in the first degree (11 *Del.C.* § 636(a)(1)) and possession of a deadly weapon during the commission of a felony (11 *Del.C.* § 1447(a)) in the death of Ronald Baird. Defendant received a mandatory sentence of life imprisonment on the murder one conviction and an additional three-year term for the weapons offense. On appeal, Davis asserts nine grounds for reversal. Davis' principal arguments are based on: (1) the Trial Court's instruction to the jury that "voluntary intoxication is not a defense to any criminal act"; and (2) the Trial Court's jury instruction on extreme emotional distress. We find no reversible error and, therefore, affirm.

\* \* \*

The facts underlying this appeal are not in dispute. Davis and his wife, Patricia Marie Davis, had a tempestuous marriage with the parties often separating and reconciling. On April 1, 1985, Davis, who was then separated from his wife, called his wife and threatened to kill her and her boyfriend Baird, with a gun. Davis told his wife that he was coming to the apartment complex where she lived and that he would kill both her and Baird if they were there.

Davis arrived at the complex and confronted his wife and Baird in the parking lot. Davis attacked Baird and, during the ensuing struggle, stabbed him with a knife.

Thereafter, Baird fell limp and Davis fled from the scene of the crime. Baird later died from a four-inch deep knife wound that penetrated his heart.

Davis went to Justice of the Peace Court No. 11, planning to file a complaint against Baird for allegedly assaulting him. A police officer, however, arrested Davis for the incident that occurred at the apartment complex. The officer advised Davis of his *Miranda* rights and Davis expressly stated that he understood those rights. Although Davis had a smell of alcohol on his breath, he did not appear intoxicated to the officer. Davis' gait was steady and his speech, though excited, was normal without slurring. After the officer asked Davis if he wanted to make a statement, Davis replied that he and Baird had fought, each stabbing the other, and he had left to come to Court No. 11.

The officer proceeded to take Davis to the local hospital for treatment of his stab wounds. At the hospital, two detectives arrived to question Davis. Davis acknowledged that he had been advised of his rights; that he understood his rights; and that he wanted to speak to the police. After telling the detective that he had drunk five beers about three hours earlier, Davis gave a statement detailing the incident with Baird. When the detective learned that Baird had died, he arrested Davis for murder.

At trial, Davis' involvement in the fatal stabbing was not at issue. The central issue was the degree of Davis' culpability. Davis' first contention was that voluntary intoxication could negate the intent element of intentional murder one and reduce the crime to reckless murder in the second degree.[1] Davis testified that "[he] felt like [he] was pretty drunk" and that he did not remember talking to either the police officer or the detective. In addition, a waitress from a local bar, a lay witness, testified that she had served Davis five beers and two shots of tequila three hours before the incident. Both the police officer and the detective, as well as the emergency room physician, testified that Davis did not appear to be intoxicated. Davis, however, did not even attempt to offer any expert witness to give opinion testimony concerning the effect of the alcohol he consumed on his capacity to form the *mens rea* of the charged offenses.

Davis also argued, in the alternative, that because of his history of jealousy, "runaways," and rejection, he was under extreme emotional distress and, under 11 *Del.C.* § 641, could not be liable for murder in the first degree.[2] The jury, however, as previously noted, found Davis guilty of murder one and possession of a deadly weapon during the commission of a felony.

## I

The first issue presented is whether the Trial Court erred as a matter of law in instructing the jury that "voluntary intoxication is not a defense to any criminal act." As will be seen, the issue is foreclosed by our recent decision in *Wyant v. State*, Del. Supr., 519 A.2d 649 (1986).

At trial, Davis requested a jury instruction that under 11 *Del.C.* § 231(c), voluntary intoxication is not a defense to a reckless state of mind.[3] On appeal, Davis as-

---

1. 11 *Del.C.* § 636(a)(1) defines Murder in the First Degree as follows:

    A person is guilty of murder in the first degree when he *intentionally* causes the death of another person.

    Section 635(a), however, defines Murder in the Second Degree as follows:

    A person is guilty of murder in the second degree when he *recklessly* causes the death of another person.... 11 *Del.C.* § 635(1).

2. 11 *Del.C.* § 641 reads, in pertinent part, as follows:

    The fact that the accused intentionally caused the death of another person under the influence

of extreme emotional distress is a mitigating circumstance, reducing the crime of murder in the first degree as defined by § 636 of this title to the crime of manslaughter as defined by § 632 of this title.

3. 11 *Del.C.* § 231(c) provides:

    (c) "Recklessly".—A person acts recklessly with respect to an element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from his conduct. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable as-

serts that he requested the section 231(c) language so he could rely on the underlined definition of "recklessly." Defendant construes the definition of "recklessly" to mean that voluntary intoxication can cause one not to perceive a risk and thereby reduces what would have been an intentional act to a reckless act. Davis, however, failed to explicitly make this argument on the record to the Trial Court and, hence, it is barred by Rule 8. However, *Wyant* requires its rejection on the merits and our affirming the Court's charge. The Court charged the jury as follows:

> We have a statute in this State, Title 11, Section 421, that reads in pertinent part: "The fact that a criminal act was committed while the person committing such act was in a state of intoxication or was committed because of such intoxication is no defense to any criminal charge if the intoxication was voluntary."
>
> Under this section of the Code, voluntary intoxication is not a defense to any criminal act.

On appeal, Davis asserts a two-part argument: *one*, that because voluntary intoxication is a fact defense which can negate the intent element of first degree murder, the Trial Court gave an incomplete instruction on voluntary intoxication; and *two*, that the Trial Court denied him due process of law by depriving him of the right to offer some credible evidence to negate the requisite intent for a murder one conviction. *See* 11 *Del.C.* § 302.[4] The State counters that (1) the legislative intent of section 421 was to completely eliminate voluntary intoxication as a defense; and (2) because voluntary intoxication was a "gratuitous" affirmative defense, its elimination does not offend the Constitution.

We conclude that the Trial Court did not err as a matter of law in its construction of 11 *Del.C.* § 421 and that its charge to the jury that "voluntary intoxication is not a defense to any criminal act" was a complete and accurate statement of Delaware law.

### A.

In *Wyant*, we held that section 421 must be construed as evidencing legislative intent that the "no defense" of voluntary intoxication to crimes involving reckless conduct extends to all statutorily defined crimes whether committed "intentionally, knowingly or recklessly." *Wyant, supra* at 651. Since section 421 effectively eliminates voluntary intoxication as a defense to any criminal act, we must reject Davis' contention that the Trial Court was required to give a charge similar to the charge given in *State v. Gist*, Del.Super., Cr.A. No. IN85–02–0722, Balick, J. (Oct. 9, 1985).[5] In *Gist*, the Superior Court charged the jury as follows:

> The criminal code includes the following section on voluntary intoxication:
>
> > The fact that a criminal act was committed while the person committing such act was in a state of intoxication, or was committed because of such intoxication, is no defense to any criminal charge if the intoxication was voluntary.
> >
> > \*　\*　\*　\*　\*　\*
>
> > "Intoxication" means the inability, resulting from the introduction of substances into the body, to exercise control over one's mental faculties.
> >
> > "Voluntary intoxication" means intoxication caused by substances which the actor knowingly introduces into his

person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto. (underlining added).

**4.** 11 *Del.C.* § 302(b) provides:

The defendant may produce whatever evidence he has tending to negate the existence of any element of the offense, and, if the court finds that a reasonable juror might believe that evidence, the defendant is entitled to a jury

instruction that the jury must consider whether the evidence raises a reasonable doubt as to the defendant's guilt.

**5.** Gist, indicted for first degree murder, was found guilty of the lesser included offense of murder in the second degree. His appeal is currently pending before our Court on other issues that do not involve the trial court's jury instructions.

body, the tendency of which to cause intoxication he knows or should know....

Although intoxication or drunkenness alone will never provide a legal excuse for the commission of a crime, the fact that a person may have been intoxicated at the time of the commission of the crime may negate the intention required for commission of an offense.

Thus, evidence that a defendant acted while in a state of intoxication may be considered in determining whether or not the defendant acted with the conscious object or purpose of causing death.

If the evidence in the case leaves the jury with a reasonable doubt whether, because of the degree of his intoxication, the accused was capable of forming, or did form, the intent to cause death, the jury should acquit the accused of murder in the first degree.

As I instructed you earlier, a person who creates a risk of death but is unaware of it solely by reason of voluntary intoxication acts recklessly with respect to causing death.

Although the *Gist* charge was apparently taken from pattern instructions from federal jury practice, *see* Devitt and Blackmar, *Federal Jury Practice and Instructions*, § 14.19 at 431–32 (1977), *Wyant* renders the last four paragraphs of the *Gist* charge erroneous. *Wyant, supra* at 654–58. *Wyant* also disposes of the related argument that voluntary intoxication must remain a "fact" defense for a defendant to assert because it may negate the element of intent or volition. *Wyant, supra* at 658. We quote from *Wyant:*

> The legislative history of the statutory defense of voluntary intoxication, 11 *Del. C.* § 421, evidences, in our view, legislative intent to accomplish several objectives: *One,* to abolish the pre-Code Delaware law's limited recognition of voluntary intoxication as an available affirmative defense to certain crimes requiring proof of specific intent but as "no defense" to crimes involving reckless conduct or proof of only a general intent; *two,* to extend the "no defense" at com-

mon law of voluntary intoxication for crimes involving reckless conduct or unspecified general intent to all Code crimes and thereby abolish voluntary intoxication as an available defense to any crime; and *three* to harmonize section 421 with the underlying principles of the Criminal Code and specifically section 231 defining state of mind and proof of intent.

*Wyant, supra* at 657–58. Thus, for the "no defense" language of section 421 to be given effect, the Trial Court was not required to add any explanation to the plain meaning of the statute.

## B.

Assuming, *arguendo,* that Davis fairly raised at trial the question of whether as a matter of law voluntary intoxication may negate the requisite intent for conviction of murder one, the Trial Court's instructions, read as a whole, comported with due process and the Code provisions with respect to burden of proof. *See* 11 *Del. C.* §§ 231 and 251; *Wyant, supra* at 658–59.

■ The Court's ruling in *Wyant,* that section 421 as construed and applied by the Trial Court comports with due process, also controls the due process argument in this case. *Wyant, supra* at 658–59. Voluntary intoxication is not a constitutionally protected defense to criminal conduct. *Wyant, supra* at 660; *United States ex rel. Goddard v. Vaughn,* 3d Cir., 614 F.2d 929, 935, *cert. denied,* 449 U.S. 844, 101 S.Ct. 127, 66 L.Ed.2d 53 (1980). Thus, the Delaware Legislature's decision to eliminate voluntary intoxication as a defense to any crime does not implicate any recognizable constitutional right. The General Assembly was entitled to declare voluntary intoxication to be "no defense" to intentional conduct as defined under sections 231 and 251. *Wyant, supra* at 660; *Goddard v. State,* Del.Supr., 382 A.2d 238, 241 (1977). Therefore, Davis' right to introduce evidence under section 302(b), *see supra* note 4, may not be construed as including evidence of voluntary intoxication when it is no longer a defense under section 421.

*Wyant, supra* at 659. Accordingly, Davis was not deprived of due process of law.

Although Davis' trial occurred before we announced our decision in *Wyant*, the evidence admitted at trial complied with our ultimate ruling in *Wyant* as to what evidence can be admitted concerning a defendant's intoxication. *Wyant, supra* at 658. We note, however, that the evidentiary restrictions of section 421 are not applicable to the State. As illustrated in this case, it was necessary, if not essential, for the State to introduce evidence concerning the effect of alcohol or drugs on Davis to establish that he voluntarily gave his statement to the police detective. In sum, neither of Davis' arguments based on section 421 are grounds for reversal.

## II

██ Davis next contends that the Trial Court's instructions on extreme emotional distress incorrectly stated the law and were misleading to the jury. A defendant is not entitled to a particular instruction, but he does have the unqualified right to a correct statement of the law. *Flamer v. State*, Del.Supr., 490 A.2d 104, 128, *cert. denied*, 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983). We find that the Trial Court's instructions on extreme emotional distress, read as a whole, were correct as a matter of law and not misleading. *See Ross v. State*, Del.Supr., 482 A.2d 727, 736–38 (1984); *Moore v. State*, Del.Supr., 456 A.2d 1223, 1226 (1983); *Boyd v. State*, Del.Supr., 389 A.2d 1282, 1288 (1978).

We have also considered Davis' remaining seven claims and find them to be without merit. The Trial Court neither abused its discretion nor erred as a matter of law. Hence, none of these claims are grounds for reversal.

\*       \*       \*

Affirmed.