**Lisa McDERMOTT \* Petitioner,**

v.

**Jeffrey BENDER \* Respondent.**

Family Court of Delaware,
New Castle County.

Submitted Oct. 30, 1990.

Decided Nov. 21, 1990.

Gerald Z. Berkowitz, Berkowitz, Schagrin, Coonin & Cooper, Wilmington, for petitioner.

Joseph J. Rhoades, Young, Conaway, Stargatt & Taylor, Wilmington, for respondent.

CONNER, Judge.

This is the Court's decision, which was reserved on the two key questions that must be resolved in the Contempt of Court proceeding against Jeffrey Bender and on Jeffrey Bender's petition to reduce the amount of his child support obligation. Both petitions were consolidated for trial which took place on October 30, 1990. Those questions are: Is Mr. Bender's psychological disability resulting from self-inflicted heroin addiction a defense to noncompliance with a Court Order to pay child support; and is Mr. Bender, as a psychologically disabled person resulting from self-inflicted heroin addiction, entitled to a reduction in the amount of his current support obligation?

\* A fictitious name utilized to protect the anonymity of the parties.

Jeffrey Bender has been a heroin addict for the past three years, and as a result has been almost totally delinquent in his required payments of child support to his first wife. In fact, since this Court's Order of December 5, 1989, he has made payments totalling only $210.00. As of October 30, 1990, his arrearage had reached $5,983.00. During the past year, Jeffrey Bender has been in Greenwood Drug Rehabilitation center on two occasions. On March 14, 1990, he committed himself and completed a twenty-eight day residential program. He was readmitted for fourteen days on September 10th of this year. He is currently receiving therapy from Irwin G. Weintraub, clinical psychologist, and has enrolled with the State Division of Vocational Rehabilitation.

As a result of these acts and new found motivation in battling his addiction, Mr. Bender has asked this Court to temporarily relieve him of his Court Ordered duty to pay child support so that he will have a better chance at recovery. He claims that his drug addiction is a disease and thus provides a defense for non-compliance with a Court Order to pay child support as well as entitling him to a reduction in the amount of support he owes.

During the hearing on October 30, 1990, Mr. Bender presented evidence supporting his contention that his psychological disability from drug addiction prevented him from obtaining current employment. Ms. Jan Jones, a counselor employed by the Division of Vocational Rehabilitation testified that she first met with Mr. Bender on June 26, 1990. He had been employed briefly two separate times in 1990. The first job lasted for approximately one month, and the other job lasted for only ten days. It was Ms. Jones' opinion that Mr. Bender would have difficulty maintaining any job due to his present psychological state. She was optimistic as to his future opportunities in the banking industry or personnel management due to his high level of motivation for recovery.

Additional testimony as to the routine at Greenwood Center was provided by Mr. Lucian Gambino, a Greenwood counselor.

He outlined the twenty-eight day program, the release on "after-care", and the process "group" therapy which occurred during after-care. Mr. Gambino surprisingly told the Court that Greenwood does not require any blood or urine specimens in its after-care program. This program relies solely on the patient's word regarding his status. The staff at Greenwood referred Mr. Bender to the Division of Vocational Rehabilitation.

Mr. Bender's own testimony detailed his decline into daily heroin use after business reversals and bankruptcy. Recently, he was charged with assault on his second wife. He admitted that he used drugs one time after the September 7th altercation with his wife. While Mr. Bender was unable to give an accurate assessment of exactly how much his habit cost, he did testify that he had used heroin on a daily basis for two and one-half to three years, and that he often used cocaine (although it was not the drug of his choice). In effect, Mr. Bender was able to obtain enough money to support his drug habit for almost three years. While the Court cannot place a dollar figure on such compensation, it is a fair assessment to label this habit as a major expense.

Dr. Weintraub, a clinical psychologist affiliated with Greenwood Center, classified Mr. Bender as totally disabled due to his addiction and not capable of employment. He felt Mr. Bender had neither the ability for steady concentration nor the capacity to structure himself. It was Dr. Weintraub's belief that maintenance in a "therapeutic modality" and avoidance of the competitive pressures of the work force were necessary for Mr. Bender to experience "profound and intense treatment" on the road to recovery. Furthermore, Dr. Weintraub expressed the belief that even though his addiction was self-inflicted, Mr. Bender tried to commit psychological suicide for which he should not be held responsible. Instead, Mr. Bender is in need of therapy and vocational assistance. In Dr. Weintraub's opinion, incarceration would be disastrous for two reasons: (a) The lack of any significant rehabilitative program in the Delaware prisons for drug addiction;

and (b) at this juncture in Mr. Bender's recovery, incarceration would be a major setback.

■ While the Court understands the nature of heroin addiction and the self-discipline required to battle such an addiction, considerations of child support necessitate a finding in favor of the children. Drug addiction cannot be a defense to non-payment of Court Ordered child support. In this case, Mr. Bender's addiction is a result of his voluntary action. All reasonable people know the consequences of abusing drugs. If they can procure the large amount of money necessary to support their drug habit, they can easily acquire $70.00 a week to pay child support.

The parallels to be drawn between voluntary intoxication and drug addiction are quite instructive. In *Davis v. State*, Del. Supr., 522 A.2d 342 (1987). Mr. Davis appealed his conviction of intentional murder and possession of a deadly weapon during commission of a felony. He argued that the jury instructions which stated voluntary intoxication was not a defense to any criminal act were improper. He sought to reduce the intent element of intentional murder to reckless and therefore his conviction to murder in the second degree. The Court held that while appellant was not entitled to a particular jury instruction that intoxication is a defense, he was entitled to a correct statement of the law. In affirming the lower Court's decision, the Supreme Court examined 11 *Del.C.* § 421. It states:

> The fact that a criminal act was committed while the person committing such an act was in a state of intoxication is no defense to any criminal charge if the intoxication was voluntary.... Under this section of the code, voluntary intoxication is not a defense to any criminal act.

Voluntary intoxication is defined in 11 *Del.C.* § 424:

> Voluntary intoxication is intoxication caused by substances which the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or should know, unless he in-troduces them pursuant to medical advice or under such duress as would afford a defense to a prosecution for a criminal offense.

The parallels between alcohol abuse and drug abuse are clear. The Court finds that even if Mr. Bender did not anticipate all of the specific consequences resulting from such abuse, he knew or should have known the dangerous nature of using drugs. The imputation of such knowledge to Mr. Bender underscores the voluntary nature of his act. Mr. Bender must take responsibility for his actions. His failure to pay constitutes contempt and a finding of civil contempt must be entered against him.

■ Should Mr. Bender's support payments be reduced or temporarily suspended? Jeffrey Bender was formerly a self-employed businessman in total control of his finances. However, this does not mean he cannot work at a job of less prestige and with less financial compensation. One of the consequences of his drug abuse may be his learning a lesson in humility. There is nothing wrong with Mr. Bender working at a "menial" job. In fact, the Court believes that a part-time job would give some structure to Mr. Bender's day. Out of the 168 hours in a week, Mr. Bender will be spending approximately three to five daytime hours in therapy with Dr. Weintraub, and several evenings each week in group therapy. Taking into consideration various other unspecified obligations and errands, Mr. Bender will still have a great deal of free time with which he must contend. Idle time frequently leads to temptation. Despite Dr. Weintraub's testimony to the contrary, such a large amount of unstructured time would seem an obstacle to Mr. Bender's road to recovery.

In *Dolgas v. Dolgas*, Del.Fam. No. 1974–85, 1988 WL 146582, Gallagher, J. (Dec. 9, 1988), Mr. Dolgas had failed to pay child support for more than eighteen months due in part to the failure of the restaurant he owned. By his own admission, he was capable of earning $26,000.00 a year, and his ex-wife asked that this amount of income be imputed to her for purposes of paying child support. The Court held that

switching jobs is a risky, but an acceptable fact of life. However, when one under a duty to pay support voluntarily leaves a good paying position, he must first make "ample provisions for the support of his children." This *Dolgas* case is more justifiable than the case at hand for reducing support since Mr. Bender has not even tried to procure a job in order to meet his child support obligations.

In *Husband K. v. Wife K.*, Del.Supr., 343 A.2d 597, 1975, the Supreme Court held specifically that:

A person responsible for support of children cannot limit (by declining to work or otherwise refusing to achieve his reasonable earning capacity) the power and duty of the Court to make an award which is otherwise reasonable under the circumstances.

Furthermore in *Swedenhjelin v. McNair*, Del.Fam., No. C–563, Poppiti, J. (Oct. 4, 1979), the Court revealed a procedure for dealing with the non-cooperative support obligor.

Where a support obligor is not working full-time or is working below full earning capacity, the Court will first examine the reasons for such a limitation of earnings. Where the reason therefore is a matter of choice by the obligor and/or is due to factors other than care required by the children of the marriage between the parties at bar.... then the Court may ascribe income to the support obligor in order to determine that obligor's child support obligation.

The Court in *Boulden v. Boulden*, Del. Fam., No. D–8939, Ableman, J., (Jan. 16, 1982), cited also *Vane v. Vane*, Del.Fam., No. B–2118, Wakefield, J., (Nov. 19, 1982), in holding that any modification of a support Order which would decrease the amount owed places a burden on the obligor to prove that he is entitled to a modification on the basis of a justifiable change in circumstances.

Indeed, the Courts have consistently held that where a support obligor is not working full-time or is working below full earning capacity, and the reason for such a limitation of earnings is a matter of

choice by the obligor, or the obligor has not expended his best efforts to be fully employed in a position compatible with his vocational skills, the Court may consider evidence establishing the obligor's earning capacity in the local job market or attribute up to one-half of the household income. See, *E.G. O'Malley v. S.H. Avico*, Del.Fam. File No. 3–7582, Poppiti, J., (April 30, 1979); *Swedenhjelin v. McNair*, Del.Fam., File No. C–5643, Poppiti, J., (Oct. 4, 1979); *Landis v. Landis*, Del.Fam., File No. 2370–1981 and D–8621, Poppiti, J. (March 30, 1983). Along these lines, a support obligor cannot voluntarily terminate his employment or reduce his income and then use his employment or income as the ground for seeking reduction or termination of his child support obligation. *Vane; Halsey v. Halsey*, Del.Fam., File No. B–2342, James J. (Jan. 10, 1980).

Judge Ableman ruled that due to his voluntary leave from employment, father was denied any relief.

In *Waybright/DCSE v. Santiago*, Del. Fam., No. F–2977, 1988 WL 162817, Ableman, J. (Oct. 4, 1988) an incarcerated father petitioned the Court for a Review de Novo. He claimed that he could not pay child support based on the $33.00 a month he earned while working in prison. The Court, however, held that father's four year sentence for trafficking in methamphetamine was a result of his own actions. "Unlike the situation where an obligor is hospitalized or physically unable to work through no fault of his own, this individual's ability to work is a result of his criminal activity and entirely his own fault." Like the support obligor in *Santiago, supra*, Mr. Bender is not hospitalized nor is he physically unable to work; rather, he is suffering the consequence of his own voluntary conduct.

In summary, Mr. Bender cannot be excused from meeting his child support obligation and he is not entitled to a reduction of the amount of his current support. He has failed to show under 13 *Del.C.* § 506 any "just cause" for refusing to supply the required support. While he suffers from

psychological disability and it is recognized by the Court that he has undergone a drastic change in his economic circumstances, he voluntarily induced his present condition. He cannot benefit from his self-inflicted disability to the detriment of his children. His child support obligation must continue in its present amount with full knowledge that the arrearage shall continue to accumulate. The Court hopes that payment in full can be accomplished in the not too distant future.

Jeffrey Bender is found in civil contempt of this Court's Orders of December 5, 1989 and February 12, 1990 requiring monthly child support payments in the amount of $305.00. As a sanction for his civil contempt, he shall continue with the Division of Vocational Rehabilitation. Should he drop out or complete that program and not have obtained employment, he is to report to the Support Offenders Sanctions Program operated by the Department of Labor. Commencing immediately, Jeffrey Bender shall report to his support officer (Catherine Chapman) in person once a week and provide a written schedule of his daily activities. Commencing December 1, 1990, he shall apply a minimum of three places seeking part-time employment. Commencing January 1, 1991, a date over six months since his completion of the Greenwood residential program, he shall seek a job of at least thirty-five hours per week and inform his support officer of three prospective employers, with whom he personally speaks each week.

IT IS SO ORDERED.