Parris MUHAMMAD, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 380, 2002.

Supreme Court of Delaware.

Submitted: May 20, 2003.
Decided: July 28, 2003.

John S. Edinger, Jr., Esquire, and Bernard J. O'Donnell, Esquire (argued), Office of the Public Defender, Wilmington, Delaware, for Appellant.

Paul R. Wallace, Esquire (argued), and Elizabeth R. McFarlan, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.

PER CURIAM.

In this appeal, we consider several claimed errors in a first degree robbery trial. First, we reject appellant's argument that there was insufficient evidence to support a finding that he displayed what appeared to be a deadly weapon. Second, we hold that the prosecutor should not have argued to the jury that, by offering alternative defenses, appellant was conceding his guilt. Finally, we hold that the trial court should have honored the State's

request for a curative instruction after the court rebuked the prosecutor in the jury's presence.

### Factual and Procedural Background

On June 14, 2001, a tall black man wearing jeans, a white T-shirt, and what appeared to be a dreadlock wig robbed a teller at a Wilmington Trust Bank in New Castle, Delaware. According to the bank teller, the robber threw a bag across the counter and said, "Give me all your hundreds and fifties. I have a gun. I will kill you if you don't." The teller complied, because she thought he had a gun. She formed that impression because the robber kept fooling with the bottom of his shirt with one hand, and she could not see what was beneath the shirt.

As soon as the robber left, bank employees called the police and described the perpetrator. A witness saw a person matching the description running toward Battery Park, and a police officer noticed two men leaving the park's rest room. One of those men was Parris Muhammad. While two police officers stayed with the men, a third officer searched the rest room. There the officer found a pair of boots, jeans, and a dreadlock wig in the trash can. In the vicinity, the police also found a bag containing money from the bank stained with red dye from a dye pack that the teller had slipped into the bag. Muhammad was arrested and, after testing, the police determined that the T-shirt he was wearing at the time of his arrest was stained with the same dye found on the bills. There was no evidence that Muhammad ever possessed a gun.

At trial, the prosecutor asked one of the responding police officers whether all the witnesses gave consistent descriptions of the perpetrator. After asking a general question on the subject, Muhammad objected and, at a sidebar conference, ex-plained to the court that the question invited a response that would be objectionable hearsay. The court apparently shared Muhammad's concern, ruling that the one question already posed would be allowed, but warning the prosecutor that he needed to be "very careful about how far you go." The prosecutor then asked a series of questions about the witnesses' descriptions of the perpetrator—his race, build, and clothing. When the prosecutor asked about the dreadlock wig, Muhammad objected and, in the jury's presence, the trial court admonished the prosecutor for having stepped over the line. When the prosecutor started to respond, the court told the prosecutor that if he said anything else he would be held in contempt. The following morning, the prosecutor asked that the court give a curative instruction because the jury was left with the impression that he had done something wrong and might infer from the court's comments that the court was "siding" with the defendant. The court declined to give the requested instruction.

During closing argument, Muhammad argued in the alternative. He claimed that he was not the perpetrator, and also argued that the facts of this case do not support a first degree robbery conviction because the perpetrator did not display what appears to be a deadly weapon. In rebuttal, the prosecutor addressed the alternative defenses by saying that, if Muhammad did not commit the crime, he would not care about whether it was robbery first degree or robbery second degree. According to the prosecutor, the only reason Muhammad focused on the different degrees of robbery was because he was guilty. Muhammad did not object to this argument at trial, and the jury found him guilty of first degree robbery.

### Discussion

██ The first issue, whether there was sufficient evidence that Muhammad dis-

played what appeared to be a deadly weapon, has been the subject of several recent decisions.[1] In *Walton v. State*[2], this Court reversed a first degree robbery conviction, holding that a person who handed the bank teller a note saying he had a bomb, while holding one hand in his pocket, did not "display what appears to be a deadly weapon" for purposes of the criminal statute.[3] The *Walton* majority held that there must be conduct, in addition to the verbal threat, "that could be viewed objectively as 'display[ing] what appears to be a deadly weapon.' "[4]

Muhammad's crime is distinguishable. In addition to his verbal threat, Muhammad fiddled with something under his shirt. Applying *Walton*, we find that Muhammad's actions provided an objective manifestation of the weapon he claimed to have and threatened to use against the teller. As a result, we conclude that there was sufficient evidence to support Muhammad's conviction of first degree robbery.

■ In his closing argument, Muhammad tried to convince the jury of two things—that he did not commit the robbery, and that whoever did commit the robbery did not commit first degree robbery because there was no display of what appeared to be a deadly weapon. In rebuttal, the prosecutor told the jury that, by arguing in the alternative, Muhammad was admitting his guilt:

The element of Robbery in the First Degree——it is interesting that they

argue he didn't do this, but if he did, it is not Robbery First....If he didn't do it, what does he care [what] that person in there did. If that is not him in that photograph, what does he care what that person said to [the bank teller] or what he did with his hands? Why does he care? Because he did it. He committed a bank robbery. He committed Robbery in the First Degree.

\* \* \*

Again, if this is not him, who cares. But being as [Muhammad's counsel] raised it, why, because he does care, because the evidence against Parris Muhammad is overwhelming. So what does he want, he wants Robbery Second instead of Robbery First....

■ It is settled law that a defendant may present alternative defenses, even if they are inconsistent.[5] The prosecutor's argument improperly attempted to curtail Muhammad's defenses by suggesting that his alternative argument was an admission of guilt. Muhammad did not object, however, and we conclude that the prosecutor's comments, although clearly inappropriate, were not so prejudicial as to warrant reversal under a plain error standard of review.[6]

■ Finally, we address the State's cross-appeal over the request for a curative instruction. After the trial court had cautioned the prosecutor at sidebar about the very limited scope of permissible ques-

---

1. *See, e.g.: Walton v. State,* 821 A.2d 871 (Del.2003); *Word v. State,* 801 A.2d 927 (Del. 2002). In addition, the General Assembly recently amended the relevant statute to provide that one is guilty of first degree robbery if one "represents by word or conduct that he or she is in possession or control of a deadly weapon." House Bill No. 115, 142nd General Assembly, enacted June 30, 2003.

2. 821 A.2d 871.

3. Del.Code Ann. tit. 11, § 832(a)(2).

4. 821 A.2d at 876.

5. *Zimmerman v. State,* 628 A.2d 62, 67 (Del. 1993).

6. *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986)

tioning, the prosecutor nonetheless asked a series of questions that pushed the limits of the court's ruling. Finally, when Muhammad objected, the trial court responded:

> The Court: [Mr. Prosecutor], you just stepped over it. The jury will disregard all your questions. That line of questioning is shut off. I warned you at sidebar about being—you just went past the line.
>
> Prosecutor: I was—
>
> The Court: I have ruled. If you say anything further I will find you in contempt.

First, we emphasize that the trial court's response was not at all inappropriate. Trial judges must maintain order in their courtrooms and prompt action, such as that taken in this case, may be necessary to keep a relatively small clash of wills from becoming a larger problem. The prosecutor's request for a curative instruc-tion, however, was equally appropriate. Juries may get the wrong impression when they witness the court reprimanding an attorney. They may not understand what the attorney did wrong, and they may lose confidence in the attorney's case because of the court's criticism. Thus, the better practice would be to give a brief curative instruction to remind the jury that the court is impartial and to explain that its criticism of the prosecutor should have no bearing on the jury's evaluation of the evidence or its verdict.

### Conclusion

Based on the foregoing, the judgment of the Superior Court is affirmed.