Michael **KEYSER**, Defendant Below, Appellant,

v.

**STATE** of Delaware, Plaintiff Below, Appellee.

No. 238, 2005.

Supreme Court of Delaware.

Submitted: Jan. 18, 2006.
Decided: Feb. 17, 2006.

---

63. *Id.* (citing *Lunnon v. State,* 710 A.2d 197, 201 (Del.1998)).

64. *Id.* (citing *State v. Halko,* 193 A.2d 817, 829 (Del.Super.Ct.1963)).

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, DE, for Appellant.

John Williams (argued), Marie O'Connor Graham and Robert J. O'Neill, Jr., Department of Justice, Dover, DE, for Appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

JACOBS, Justice.

Michael E. Keyser, the defendant-below ("Keyser"), appeals from his sentence of life imprisonment arising out of his convictions of first degree intentional murder and first degree conspiracy to commit murder. Keyser asserts four claims of error, namely, that the Superior Court: (1) abused its discretion by excluding the hearsay statement of decedent Jacob Jones; (2) abused its discretion by declining to grant Keyser's requested presumption of innocence instruction to the jury; (3) legally erred by failing to issue a lesser included offense jury instruction for attempted murder; and (4) made disparaging comments to defense counsel, in the presence of the jury, that deprived Keyser of his right to effective assistance of counsel and a fair trial. We conclude, for the reasons discussed herein, that Keyser's claims of error lack merit and that his convictions should be affirmed.

## FACTS

On September 29, 2003, at the Dover Budget Inn, Michael Keyser and Jacob Jones killed Kimberly Holton. Ms. Holton was the foster sister of Jones' girlfriend, Heather Nasakaitis. Keyser drove Ms. Holton to the motel, and after both men had sex with her in the room, Keyser held down Ms. Holton's legs while Jones' suffocated her. The two men wrapped Ms. Holton's body in a blanket, bound it with duct tape, and put the body into the trunk of Jones' car. That evening, Jones rented an airplane from Dover Air Park, and circled over the Atlantic Ocean near Cape May, New Jersey. On October 8, 2003, a couple found Ms. Holton's body in the ocean while fishing three miles from the Cape May coastline.

Jones committed suicide on October 20, 2003, allegedly leaving behind a suicide

note. Keyser gave a taped interview statement to police on October 27, claiming that it was Jones who planned to kill Holton, and that Jones had threatened to kill him (Keyser) and his girlfriend (Kathy Pippin) if Keyser did not assist him. After Keyser was arrested on October 28, he attempted suicide in his jail cell, but was unsuccessful. A jury convicted Keyser of murder first degree and conspiracy first degree on October 27, 2004. Keyser was sentenced to life imprisonment without reduction. This is Keyser's direct appeal from the judgments of conviction.

## ADMISSION OF HEARSAY EVIDENCE

█ Keyser first claims that the trial court improperly excluded from evidence a statement by Jacob Jones, overheard by defense witness Brenda Wingle, that Jones wanted to kill Kimberly Holton. At trial, Keyser argued that that statement should be admitted into evidence through the co-conspirator exception to the hearsay rule. The trial court declined to admit the statement because there was no evidence of an ongoing conspiracy at the time the statement was made. On appeal, Keyser contends that the trial court erred by not admitting the statement *sua sponte* under the "state of mind" exception to the hearsay rule.[1]

█ Because Keyser did not advance this claim below, we review it for plain error.[2] To be plain, the error must affect substantial rights, meaning that the error must have affected the outcome of the trial.[3] Keyser has failed to meet that standard.

The excluded statement attributed to Jones that he (Jones) wanted to kill Kimberly Holton, was cumulative evidence that merely repeated what Keyser had told the police in his own statements, all of which were admitted into evidence. Keyser told the police that (i) Jones revealed his plan to Keyser and asked him for help in killing Ms. Holton, and (ii) on several occasions Jones told Keyser that he wanted Ms. Holton dead, because she was creating problems in his relationship with his girlfriend, who was Ms. Holton's foster sister. Given this evidence, Keyser has not shown that one more cumulative statement by Jones that he wanted to kill Ms. Holton would have affected the outcome of Keyser's trial. It, therefore, was not plain error for the trial court to fail, *sua sponte*, to admit Jones' hearsay statement under the "state of mind" exception.

## PRESUMPTION OF INNOCENCE INSTRUCTION

█ Keyser's second claim of error is that the trial court improperly denied his request for a presumption of innocence jury instruction modeled after the federal pattern instruction. After denying that request, the trial court gave the jury the Delaware State Court Pattern Instruction on reasonable doubt. Keyser claims that that instruction was inadequate, because it suggested to the jury that they could find guilt based on a level of proof that was less

---

1. D.R.E. 803(3) provides that certain statements otherwise excluded by the general hearsay rule are admissible where the statement is one of "the declarant's then *existing* state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health) . . . ."

2. *Capano v. State,* 781 A.2d 556, 653 (Del. 2001); *McDade v. State,* 693 A.2d 1062, 1064 (Del.1997).

3. *United States v. Olano,* 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986).

than what is constitutionally required to create a reasonable doubt. We review the trial court's denial of a requested jury instruction *de novo*.[4]

■ Although the trial court must instruct a jury that the defendant's guilt must be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used.[5] Reversal is required only if "a deficiency in the jury instructions 'undermined the jury's ability to intelligently perform its duty in returning a verdict.' "[6]

■ The pattern jury instruction given by the trial court did not undermine the jury's ability to perform its duty intelligently.[7] The Delaware State Court Pattern Instructions are "a most valuable resource and should be consulted in the first instance."[8] The issued instruction accurately stated the law. It neither lowered the State's burden of proof below that which was constitutionally required, nor did it undermine the jury's ability to perform its duty. We therefore reject Keyser's second claim of error.

## THE LESSER–INCLUDED OFFENSE INSTRUCTION

■ Keyser's third claim is that the trial court improperly failed to issue, *sua sponte*, a lesser-included offense jury instruction for attempted murder. Because Keyser did not request that instruction during his trial, we review that claim for plain error, which requires a showing that the failure to grant that instruction would have affected the outcome of his trial.[9]

Keyser's defense counsel argued to the jury that the State's evidence was insufficient to prove beyond a reasonable doubt that Ms. Holton died in the hotel room after Keyser and Jones attacked her. That is, counsel raised the possibility that

4. *Lunnon v. State*, 710 A.2d 197, 199 (Del. 1998).

5. *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); *Cabrera v. State*, 747 A.2d 543, 544 (Del.2000); *Flamer v. State*, 490 A.2d 104, 128 (Del.1983) ("As a general rule, a defendant is not entitled to a particular instruction, but he does have the unqualified right to a correct statement of the substance of the law."). *Accord, Probst v. State*, 547 A.2d 114, 119 (Del.1988).

6. *Flamer*, 490 A.2d at 128.

7. The jury instruction issued by the trial court stated:

The law presumes every individual charged with a crime to be innocent; and this presumption of innocence requires a verdict of not guilty, unless you are convinced by the evidence that the Defendant is guilty beyond a reasonable doubt.

The burden of proof is upon the State to prove all the facts necessary to establish each and every element of the crime charged beyond a reasonable doubt.

Now, reasonable doubt is a practical standard. On the one hand, in criminal cases, the law imposes a greater burden of proof than in civil cases. Proof that a Defendant is probably guilty is not sufficient.

On the other hand, there are very few things in this world which we know with absolute certainty; and, therefore, in criminal cases, the law does not require proof that overcomes every possible doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt. Therefore, based upon your consideration of the evidence, if you are firmly convinced that the Defendant is guilty of the crime charged, you should find the Defendant guilty. If, on the other hand, you think there is a real possibility or, in other words, reasonable doubt that the Defendant is not guilty, you must give the Defendant the benefit of the doubt by finding that Defendant not guilty.

8. *Cabrera*, 747 A.2d at 545. *See also Corbitt v. Tatagari*, 804 A.2d 1057, 1062 (Del.2002).

9. DEL. SUPR. CT. R. 8; *Olano*, 507 U.S. at 732–34, 113 S.Ct. 1770; *Capano*, 781 A.2d at 653; *Wainwright*, 504 A.2d at 1100.

at some point after Jones and Keyser attacked her, Ms. Holton may have died by Jones' hand alone. Because the trial court did not provide a lesser-included instruction on attempted murder (Keyser argues), even if the jury had a reasonable doubt whether Ms. Holton was dead when Keyser and Jones removed her body from the hotel, the jury had no procedural vehicle to give effect to that reasonable doubt.

▮ We conclude that for the trial court not to issue an attempted murder instruction *sua sponte* was not plain error. Under Delaware case law, a "trial judge must give a lesser-included offense instruction at the request of either [party] if the evidence presented is such that a jury could rationally find the defendant guilty of the lesser-included offense and acquit the defendant of the greater offense."[10] To prevail on his claim of error, Keyser must be able to point to at least some evidence that Ms. Holton was alive at the time her body was removed from the motel. There was no such evidence. Keyser himself admitted that he intended to help Jones kill Ms. Holton, and that after Jones suffocated Ms. Holton while Keyser held her legs down in the motel room, Jones checked her pulse and announced that she was dead. Because there was no evidence that Ms. Holton was alive after the men carried her body out of the motel room, there was no plain error in the trial court's refusal to issue an attempted murder instruction.

▮ Keyser also cannot demonstrate plain error because the absence of a request for the attempted murder instruction may have been a tactical decision by defense counsel. The trial judge instructed the jury on second degree murder, manslaughter, and criminally negligent homicide, but defense counsel did not request an attempted murder instruction. Where no instruction is requested, the trial judge cannot discount the possibility that such a position is a tactical decision by defense counsel.[11] Plain error assumes oversight, not a tactical decision by defense counsel.[12] Because Keyser cannot establish that the lack of request was not his defense counsel's tactical decision, he has not demonstrated any plain error by the trial court.

### THE TRIAL COURT'S REPRIMANDS OF DEFENSE COUNSEL IN THE JURY'S PRESENCE

▮ Keyser's final claim of error is that the trial court openly reprimanded his defense counsel, in the presence of the jury, and thereby deprived Keyser of his right to effective assistance of counsel and a fair trial. We ordinarily review claims alleging the infringement of a constitutionally protected right *de novo*,[13] but because Keyser failed to challenge those judicial remarks by requesting the trial judge to issue a curative instruction, he waived those claims.[14] In these circumstances, the challenged judicial remarks are reviewed only for plain error.[15]

10. *State v. Cox*, 851 A.2d 1269, 1273 (Del. 2003).

11. *See Cox*, 851 A.2d at 1273 (Delaware follows the "party autonomy" rule that a trial judge ordinarily should not give an uncharged lesser included offense instruction where neither side requests it.); *Stansbury v. State*, 591 A.2d 188, 192 (Del.1991).

12. *See Tucker v. State*, 564 A.2d 1110, 1118 (Del.1989).

13. *Capano*, 781 A.2d at 607; *Seward v. State*, 723 A.2d 365, 375 (Del.1999).

14. *See Smith v. State*, 560 A.2d 1004, 1007 (Del.1989).

15. Supr. Ct. R. 8; *See Capano*, 781 A.2d at 653; *McDade v. State*, 693 A.2d 1062, 1064 (Del.1997); *Chance v. State*, 685 A.2d 351, 354 (Del.1996).

The trial judge made the three challenged remarks at different points during the trial, all in the presence of the jury. Only the second and third remarks merit discussion. The second comment occurred after defense counsel became concerned that one of the trial court's evidentiary rulings amounted to judicial comment on the evidence in violation of Article 4, Section 19 of the Delaware Constitution:

> [DEFENSE COUNSEL]: All right, and we agree that the jury's recollection as to the question and answer that controls, correct?
>
> THE COURT: And we also agree [Counsel], that I will be the one who will give jury instructions; isn't that correct, sir?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.
>
> THE COURT: So if we have this discussion any more, it will be very unpleasant, okay? [Counsel], do we understand each other?
>
> [DEFENSE COUNSEL]: Absolutely, Your Honor. I am not rearguing. You sustained it.
>
> THE COURT: We are not arguing about what you and I, what our roles are.
>
> [DEFENSE COUNSEL]: No. I am not arguing with the Court at all.
>
> THE COURT: You may continue.

The third comment occurred after defense counsel had concluded his cross-examination of a State witness. The prosecutor attempted to ask a question on redirect when the trial court interrupted:

> THE COURT: No. No. You get—this is her witness. I don't even know why you're standing up. She gets to stand up; you don't.

> [DEFENSE COUNSEL NO. 2]:[16] Your Honor, we are going to object to the form.
>
> THE COURT: The door's been open. You asked the questions you wanted to ask previously in regards to his reference.
>
> [DEFENSE COUNSEL]: That wasn't our objection, Your Honor.
>
> THE COURT: Well, I'm not sure what your objection is. To the extent that you have one, it's overruled. And both of you cannot stand up. You know the rules.
>
> [Counsel], don't even say anything else. I've let it go periodically, but this is her witness. If she wants to say something, she is certainly capable, I'm quite convinced, of saying whatever she'd like to say.
>
> Now she may not say exactly what you would like her to say, I understand that, but this is her witness. Okay. Now, if there's an objection as to form, we haven't even got to the question yet. So let's ask the question and see if you still have an objection to it.
>
> Don't say anything else, you're going to get yourself in trouble.
>
> [DEFENSE COUNSEL]: I'm not going into the objection, Your Honor. I just want to be able to, once we are done, to put on the record what we would have objected to.
>
> THE COURT: Well, no.
>
> [DEFENSE COUNSEL]: Can I confer with counsel?
>
> THE COURT: She's sitting right next to you. You can confer as much as you would like to.

16. Keyser had two defense counsel, both of whom stood to object at the time this exchange took place.

During the summations, the trial court thanked the prosecutor after her closing argument, but when defense counsel concluded her closing argument, the trial judge did not thank counsel, but asked the jury whether they needed a lunch break. After the prosecutor's rebuttal argument, again, the trial court personally thanked the prosecutor.

Keyser claims that the trial court's remarks to his counsel were "belittling and sarcastic," and "unnecessarily demeaning towards the Defendant's counsel in front of the jury." Regrettably, we must agree. The record does not reveal the reasons for the trial court's apparent antipathy to defense counsel. Moreover, even if defense counsel's actions or behavior did justify the trial court's reprimands, the manner in which the court proceeded to rebuke defense counsel was unnecessarily demeaning and threatened to jeopardize Keyser's right to a fair trial.[17]

■ We have previously noted that "[j]uries may get the wrong impression when they witness the court reprimanding an attorney. They may not understand what the attorney did wrong, and they may lose confidence in the attorney's case because of the court's criticism."[18] To avoid the risk of prejudicing either side's case in the eyes of the jury, any reprimands of counsel, if justified, should be made outside the jury's presence. In this case, the trial court could have briefly sent the jury out, or held a sidebar on the record, or recessed the trial and met with counsel in chambers on the record. The trial court's choice to reprimand defense counsel before the jury, however, was improper.

■ That said, for Keyser to prevail on his constitutional claim under the plain error standard, he must establish that the trial judge's rebuke of counsel affected his substantial rights, meaning that it must have affected the outcome of his trial.[19] Again, Keyser has failed to meet that burden, because the overwhelming evidence of Keyser's guilt at trial negates any inference that the trial court's remarks affected the outcome.

Keyser made highly incriminatory admissions of his participation in Kimberly Holton's murder. Keyser admitted that he brought Ms. Holton to the motel room knowing that Jacob Jones wanted to kill her. Keyser also admitted that he held down Ms. Holton while Jones suffocated her, and helped Jones wrap her in a blanket bound with duct tape, and move the body from the motel room into the trunk of Jones' car. Moreover, Keyser told police that Jones had previously asked Keyser to help him kill Ms. Holton, remove her body from the motel, and take the body to an airplane to be dumped into the ocean.

Besides his incriminating statements to police, there is significant evidence of Keyser's consciousness of guilt. Keyser had previously lied to police, telling them that he had not seen the victim for four or five months, even though video surveillance of a Dover Wawa convenience store showed that Keyser was with Ms. Holton on the night of the murder. Keyser also asked his girlfriend to tell the police (falsely) that he had been working on the night of the

17. *See Muhammad v. State,* 829 A.2d 137, 140 (Del.2003).

18. *Id.*

19. *Olano,* 507 U.S. at 732–34, 113 S.Ct. 1770; *Wainwright,* 504 A.2d at 1100 ("Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process.").

murder. And, Keyser attempted suicide the day after he made his statements to police, leaving two suicide notes. Given the overwhelming evidence of his guilt, Keyser has not shown that the trial court's reprimands of defense counsel before the jury, although improper, amounted to plain error that deprived him of his right to a fair trial.

## CONCLUSION

For the foregoing reasons, the Superior Court's judgments of conviction are affirmed.