Gary D. PIERCE, Defendant–
Below, Appellant,

v.

STATE of Delaware, Plaintiff–
Below, Appellee.

No. 56, 2006.

Supreme Court of Delaware.

Submitted: Aug. 21, 2006.
Decided: Nov. 8, 2006.

Anthony A. Figliola, Jr. of Figliola & Facciolo, Wilmington, DE and James S. Friedman, Newark, NJ, for Appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

RIDGELY, Justice:

Defendant–Appellant Gary D. Pierce ("Pierce") appeals his convictions in Superior Court of two counts of Attempted First Degree Rape and two counts of First Degree Rape. Pierce first claims that the incident leading to his conviction should be viewed as a single, ongoing incident rather than four separate and distinct assaults because his acts took no longer than 15 minutes to complete. He also claims that the Superior Court erred by refusing to give a specific jury instruction regarding single theory unanimity. We find no merit to his arguments and affirm.

## I.

Emily Hoffner [1] was working alone as a part-time leasing agent in her model-

1. Pursuant to Supr. Ct. R. 7(d), the name of the victim has been replaced with a pseudo-

apartment office on Saturday, June 12, 2004. Defendant Gary D. Pierce arrived at approximately 4 p.m. to take a tour of an apartment and told Hoffner that he and his brother were interested in renting one. After Hoffner gave Pierce a brief tour, Pierce told Hoffner he was going to telephone his brother and return shortly. Both Hoffner and Pierce testified to different versions of what happened next.

Hoffner testified that several minutes after Pierce left, he returned, walked up to her, and grabbed her around the neck. As she struggled, Pierce punched her in the face and forced her into the bathroom. He then ordered her to remove her clothes, bent Hoffner over the bathtub, and tried to engage her in vaginal sexual intercourse from behind. Upon failing to do so, he moved her to the toilet and attempted to penetrate her again in the same manner. Pierce then forced Hoffner into the adjacent bedroom where he succeeded in his attempt at the same, and the rape lasted two or three minutes. He then ordered her back to the bathroom, bent her over the toilet and again raped her. After a minute or two in the bathroom, the telephone rang and Pierce told Hoffner to answer it. After the call ended, Pierce demanded her "I.D." and Hoffner gave him her driver's license. Pierce then fled the building. After he left, Hoffner called the police. The entire incident lasted ap-proximately ten to fifteen minutes from the time Pierce returned after the tour until he left with her driver's license. Witnesses and phone records verified this time frame.

Pierce testified that he had met Hoffner prior to that day and that she had invited him to visit her at work. He complied, and testified that the sexual intercourse was consensual. After having sex one time, Pierce said that Hoffner wanted to have more sex, but Pierce refused. According to Pierce, Hoffner then cursed and attacked him. To push her away and aid his escape, Pierce said he "mushed" her face (i.e., "pushed her on her face with some relatively minimal amount of force for the sole and express purpose of getting her to release him") and then quickly left the apartment. The police arrested him almost two weeks later.

The State charged Pierce with two counts of First Degree Rape, two counts of Attempted First Degree Rape, and misdemeanor Theft. The judge instructed the jury how they were to consider Pierce's conduct with the "Separate Sexual Acts Or One Continuous Sexual Act" instruction.[2] The jury convicted him on all charges.

## II.

On appeal, Pierce raises five issues, four of which claim that the sexual acts consti-

---

nym.

2. The judge instructed the jury:
 The defendant is charged with two counts of first degree rape and two counts of attempted first degree rape. In order to find the defendant guilty as to each count, you must find beyond a reasonable doubt that a separate and distinct sexual act occurred with regard to each count as opposed to one continuous sexual act.
 In determining whether a separate and distinct act occurred, you may consider the time period between the acts; any change in location; the nature of the act; and the intent of the defendant, that is, whether he intended to commit a separate additional sexual act.
 You may consider these factors, but you are to use your common sense and consider all of the evidence in determining, as to each count, whether a separate and distinct sexual act occurred or whether the separate counts actually constituted one continuous sexual act. If you conclude that there was one continuous sexual act, then you should find the defendant guilty as to one such count and you must find the defendant not guilty of the other counts based on the same conduct.

tute a single, continuous act and should have been treated as such from the start of his proceedings. The fifth issue concerns the Superior Court's refusal to give a single theory unanimity jury instruction.

Pierce claims that the second count of Attempted First Degree Rape and the second count of First Degree Rape are multiplicitous and violate the Double Jeopardy Clauses of the United States and Delaware Constitutions.[3] He contends that his actions constituted one continuous course of criminal conduct because they occurred in close spatial and temporal proximity to one another and because the crime involved only one victim and one perpetrator. He also contends that the Superior Court committed legal error in failing to merge the second counts of rape and attempted rape and, in the alternative, to dismiss them.

■ This Court reviews *de novo* both a claim of infringement of constitutional rights[4] and denial of an application for merger.[5] We review denial of a motion to dismiss counts of an indictment for abuse of discretion.[6]

■ "Neither the Federal nor State Constitutions prevent the State from securing multiple convictions and sentences for statutory offenses occurring out of a single transaction."[7] "[A] defendant may be convicted of more than one count of a crime without violating the multiplicity doctrine if the defendant's actions are sufficiently separate in time and location to constitute distinct acts."[8]

■ This "sufficiently separate" inquiry is fact-intensive. As pointed out by this Court in *Spencer v. State,*

There is no bright-line rule for determining how much time must elapse or how much spatial separation must exist between two criminal acts for those acts to constitute separate offenses. The critical inquiry is whether the temporal and spatial separation between the acts supports a factual finding that *the defendant formed a separate intent to commit each criminal act.*[9]

This Court has stated that one " 'who commits multiple sexual assaults upon the same victim may be held responsible for, and punished for, each separate and distinct act,' albeit a violation of the same statute."[10] We have reasoned that a criminal defendant can not "take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed."[11] Each act places the victim in further danger and continues to denigrate the victim's

3. *See* U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . ."); Del. Const. art. 1, § 8 ("[N]o person shall be for the same offense twice put in jeopardy of life or limb. . . .").

4. *Williamson v. State,* 707 A.2d 350, 362 (Del. 1998).

5. *Williams v. State,* 818 A.2d 906, 909 (Del. 2002).

6. *See State v. Harris,* 616 A.2d 288, 291 (Del. 1992).

7. *Ross v. State,* 590 A.2d 503 (Del.1991) (Table); *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

8. *Spencer v. State,* 868 A.2d 821, 823 (Del. 2005); *Washington v. State,* 836 A.2d 485, 491 (Del.2003).

9. *Spencer,* 868 A.2d at 823 (emphasis added).

10. *Feddiman v. State,* 558 A.2d 278, 289 (Del. 1989) (citing *Harrell v. State,* 88 Wis.2d 546, 277 N.W.2d 462, 471 (1979)).

11. *Id.* (citing *Harrell,* 277 N.W.2d at 469).

integrity.[12] The key, therefore, is intent—whether the defendant formed a separate intent to commit each criminal act.[13]

In *Wyant v. State*,[14] this Court upheld a defendant's conviction for two counts of rape and one count of attempted rape where the sexual acts were committed against a single victim inside a single residence within a relatively short time period. While on the first floor of the residence, the defendant attempted to rape the victim by anal intercourse and then raped her vaginally.[15] The defendant then forced the victim upstairs, where he forced her to have sexual intercourse with him again.[16] The Court rejected the defendant's argument that his actions constituted one continuous criminal act.[17]

In *Feddiman v. State*,[18] this Court upheld a defendant's convictions for eight counts of unlawful sexual intercourse in the first degree as not violating the multiplicity doctrine. The defendant hit his victim with his car while she was on a bicycle, kidnapped her, and raped her in various places throughout Sussex County over the course of approximately six hours.[19] The Court upheld the convictions as not multiplicitous because of the temporal and spatial separation between the offenses.[20]

■ Here, Pierce contends that he was unlawfully convicted of two counts of attempted rape as well as two counts of rape. He argues that the second bathroom attempted rape was simply the continuation of his first attempt and that the bedroom rape was simply the culmination of his unsuccessful bathroom attempts at rape. Pierce would characterize the attempted rapes in the bathroom and the later rapes in the bedroom and the bathroom as "one continuing episode." The evidence shows a sufficient break in conduct and time to constitute separate and distinct crimes.

After Pierce first attempted to rape the victim in the bathroom by forcing her to kneel in front of the bathtub, he attempted rape again after pulling her up from the tub and forcing her to face the toilet and the wall next to the bathtub. After this second attempt failed, he then forced the victim to go into the bedroom where he committed vaginal rape. Then he forced the victim to return to the bathroom where he committed a further act of vaginal rape.

As a matter of law, the jury was not required to accept Pierce's contention that the rapes were part of the same ongoing incident. The record also supports the jury's finding of multiple sexual assaults upon the victim. After the first attempt failed, an intent was formed to try again and the victim was moved to a different location in the bathroom. The evidence of the actual rape in the bedroom was entirely additional to that of the first two attempts. Pierce gave his victim additional orders following this rape, and he formed a new intent to rape her again, manifested it, and committed that offense again after he forced her back into the bathroom.

■ The remaining claim on appeal concerns the denial of a requested jury

12. *Id.*

13. *Id.* at 289 n. 28; *Spencer,* 868 A.2d at 823.

14. 519 A.2d 649 (Del.1986).

15. *Id.* at 652.

16. *Id.*

17. *Id.* at 660–61.

18. 558 A.2d 278, 288–89 (Del.1989).

19. *Id.* at 280–81.

20. *Id.* at 289.

instruction. We review the denial of a requested jury instruction *de novo*.[21] "Although the trial court must instruct a jury that the defendant's guilt must be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used."[22] A jury charge will not serve as grounds for reversible error if it is "reasonably informative and not misleading, judged by common practices and standards of verbal communication."[23] This Court will reverse only if the alleged deficiency in the jury instructions undermines the jury's ability to perform intelligently its duty in returning a verdict.[24]

 The two counts of rape and the two counts of attempted rape alleged that the defendant facilitated the crimes "by the commission or attempted commission of assault third degree, terroristic threatening, or unlawful imprisonment in the second degree." At the prayer conference, defense counsel asked the judge to deliver a single theory unanimity instruction, which would require the jury to agree unanimously on which of the three alternatives Pierce employed to facilitate the crime. The court declined to give the instruction, relying on *Richardson v. State*,[25] and ruled that the jury need not be unanimous as to the underlying means the defendant employed to facilitate the commission of the crimes.

 A single theory unanimity instruction is required when "(1) a jury is instructed that the commission of any one of several alternative actions would subject the defendant to criminal liability, (2) the actions are conceptually different and (3) the state has presented evidence on each of the alternatives."[26] In this case, the second prong is not reached because the underlying actions are not conceptually different. All three alternatives are violent crimes against the person and in this context, they were all means of coercing the victim into submitting to rape. Because the defendant punched the victim in her face prior to the first attempt at rape, there exists in the record a basis for the jury to conclude that the defendant accomplished each attempted rape and each rape by at least this method. The jury instruction given by the trial court did not undermine the jury's ability to return its unanimous verdict.

### III.

The judgments of the Superior Court are AFFIRMED.

---

21. *Keyser v. State*, 893 A.2d 956, 960 (Del. 2006); *Ayers v. State*, 844 A.2d 304, 309 (Del. 2004).

22. *Keyser*, 893 A.2d at 960.

23. *Baker v. Reid*, 57 A.2d 103, 109 (Del.1947).

24. *Flamer v. State*, 490 A.2d 104, 128 (Del. 1983).

25. 673 A.2d 144, 147 (Del.1996) ("While listing two possible means to satisfy an element of the offense presents a risk of less than a unanimous jury finding on that specific element, the Superior Court, by properly instructing the jury, ensured that the jury would reach an unanimous decision on the *mens rea*.") (citation omitted).

26. *Stevenson v. State*, 709 A.2d 619, 634 (Del. 1998) (citing *Probst v. State*, 547 A.2d 114, 121 (Del.1988) (citations omitted)).